378 So.2d 1294 (1979)
The STATE of Florida, Appellant,
v.
Raunel RAMOS, Appellee.
No. 79-332.
District Court of Appeal of Florida, Third District.
December 28, 1979.
Rehearing Denied January 28, 1980.
*1295 Janet Reno, State's Atty., and Ira N. Loewy, Asst. State's Atty., for appellant.
Henry Gonzalez and Russell A. Spatz, Miami, for appellee.
Before HENDRY, HUBBART and NESBITT, JJ.
HUBBART, Judge.
The central question presented for review is whether a police officer's observation of a person (a) with a bulge protruding from under such person's clothing which is consistent with, but does not reveal the actual outline of a firearm, (b) wearing unseasonably long and heavy clothing on a hot day, and (c) with a prior arrest record for illegal possession of firearms, constitutes a reasonable basis to temporarily seize such person and conduct a carefully limited search of the outer clothing of such person to discover the presence of weapons under the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 12 of the Florida Constitution. We hold that: (1) such a temporary seizure and *1296 limited search of the person is reasonable within the meaning of the above constitutional provisions, and (2) the discovery and seizure of a concealed firearm in such a limited search constitutes a reasonable basis for a subsequent arrest of the person for carrying a concealed firearm, and a full-blown search of such person incident thereto, within the meaning of the above constitutional provisions. We, accordingly, reverse the order under review which suppressed the evidence seized in this cause in both the limited and full-blown search.

I
The facts pertaining to the above issue are as follows. On June 3, 1978, at approximately 3:00 p.m., Detective Orlando Martinez of the Miami Police Department, attached to the robbery division, was on duty at a car lot located at 1565 Flagler Street, Miami, Florida. It was an extremely warm day and his purpose in being at the car lot was to have his police car serviced as it was not cooling well. While there, he observed the defendant Raunel Ramos waiting for his pickup truck to be washed in a car wash facility at the rear of the car lot. At first, Detective Martinez saw only the back of the defendant, but was attracted to the defendant because he was wearing unusually long and heavy clothing for the weather. The defendant had on a dark brown leisure suit with a long-sleeved shirt and coat and was standing under a hot sun. At that point, the defendant turned to face Detective Martinez who, in turn, recognized the defendant as having a prior criminal arrest record for illegal possession of firearms. A few minutes later, the defendant again turned revealing the presence of a bulge under his clothing which was consistent with, but did not reveal the actual outline of a firearm. Under the circumstances, Detective Martinez thought the defendant might be armed, radioed this information to his police dispatcher and asked for a backup police unit.
About this time, the defendant got in his truck and drove to a nearby laundromat. Detective Martinez followed the defendant in a police car. Upon arriving at this location, Detective Martinez was joined by Officer Luis Soler of the Miami Police Department who arrived in another police car. Officer Soler briefly conferred with Detective Martinez and then approached the defendant who was about to get into his pickup truck having just paid for and picked up his laundry at the laundromat. The defendant still had a large bulge under his leisure suit. Officer Soler stopped the defendant and advised him that he wanted to ask him a few questions and to check his clothing for firearms. Whereupon Officer Soler patted the outside of the bulge of the defendant's clothing which revealed the presence of a firearm. Officer Soler ordered the defendant to put his hands on the top of the truck and retrieved a .45 caliber firearm. The defendant was thereupon placed under arrest by Officer Soler for carrying a concealed firearm and a complete search of his person was made which revealed the presence of a vial of cocaine, nine live rounds of .38 caliber ammunition, a fully loaded clip with the.45 caliber firearm.
The defendant was subsequently charged by information with carrying a concealed firearm [§ 790.01(2), Fla. Stat. (1977)] and possession of a controlled substance, to wit: cocaine [§ 893.13(1)(e), Fla. Stat. (1977)]. The defendant through counsel entered a plea of not guilty and filed a motion to suppress all of the evidence seized by the police from his person on the ground that such evidence was obtained as a result of an unreasonable search and seizure. The parties then submitted depositions of Detective Martinez and Officer Soler to the trial court as constituting the evidence on the motion to suppress. Those depositions revealed the existence of the above-stated facts. After reviewing these depositions and hearing argument of counsel, the trial court entered an order suppressing the evidence. The state appeals that order, which appeal we have jurisdiction to entertain. § 924.071, Fla. Stat. (1977).

II
The Fourth Amendment to the United States Constitution and Article I, Section *1297 12 of the Florida Constitution guarantee to the people the right "to be secure in their persons, houses, papers and effects against unreasonable searches and seizures." By their very terms, these constitutional provisions protect every person against "unreasonable searches and seizures" of their "persons." United States v. Brignoni-Ponce, 422 U.S. 873, 878, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). "[A] police officer is not entitled to seize and search every person whom he sees on the street or of whom he makes inquiries. Before he places a hand on the person of a citizen in search of anything, he must have constitutionally adequate, reasonable grounds for doing so." Sibron v. New York, 392 U.S. 40, 64, 88 S.Ct. 1889, 1903, 20 L.Ed.2d 917 (1968). Unlike the search of private premises, however, there is no general constitutional requirement that a police officer obtain a search or arrest warrant before he may seize and search a person. United States v. Watson, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976); United States v. Santana, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976); State v. Perez, 277 So.2d 778 (Fla. 1973). Compare: Camara v. Municipal Court, 387 U.S. 523, 528-29, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967); Hornblower v. State, 351 So.2d 716 (Fla. 1977).
A person has been seized within the meaning of the above constitutional provisions "whenever a police officer accosts an individual and restrains his freedom to walk away ...". Terry v. Ohio, 392 U.S. 1, 16, 88 S.Ct. 1868, 1876, 20 L.Ed.2d 889 (1968). There are, in turn, two types of police seizures of a person which act to restrain personal liberty. The first is a temporary detention on the street for investigatory purposes; the second is formal arrest which necessitates a trip to the police station for booking or for further questioning. Both are serious invasions of personal privacy and should not be lightly undertaken. "Nothing is more clear than that the Fourth Amendment was meant to prevent wholesale intrusions upon the personal security of the citizenry, whether these intrusions be termed `arrests' or `investigatory detentions.'" Davis v. Mississippi, 394 U.S. 721, 726, 89 S.Ct. 1394, 1397, 22 L.Ed.2d 676 (1969).
A temporary detention on the street is, however, a less intrusive invasion of privacy than a formal arrest and, therefore, may be constitutionally accomplished based on articulable or founded suspicion of criminal activity. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); Ingram v. State, 264 So.2d 109 (Fla.4th DCA 1972); Thomas v. State, 250 So.2d 15 (Fla.1st DCA 1971); § 901.151, Fla. Stat. (1977). A formal arrest, on the other hand, involves a more intrusive invasion of personal privacy, and, consequently, requires a greater evidentiary showing in order to be reasonable, to wit: probable cause to believe that the person arrested has committed a felony. Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); Brown v. State, 62 So.2d 348 (Fla. 1952); § 901.15, Fla. Stat. (1977).
The right to conduct a search subsequent to a reasonable police seizure of a person depends, in part, on the nature of the seizure. If the seizure is a formal arrest, the police have an automatic right, without any further evidentiary showing, to conduct a full-blown search of the person arrested and the physical area into which he might reach in order to grab a weapon or destroy evidentiary items. Gustafson v. Florida, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973), affirming State v. Gustafson, 258 So.2d 1 (Fla. 1972); Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); § 905.21, Fla. Stat. (1977). Indeed, such a scope of search is essential for the police to perfect the arrest and prevent the destruction of evidence by the arrestee. Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964). On the other hand, if the seizure is a temporary detention for investigation, there is never any right to conduct such a full-blown search of the person detained, as such is not necessary to accomplish the detention. The police may only conduct a *1298 carefully limited, self-protective search of the outer clothing of such person to discover the presence of weapons; moreover, this limited search does not automatically follow upon a valid temporary detention, but can only be accomplished based on articulable or founded suspicion that the person detained is armed. Terry v. Ohio, 392 U.S. 1, 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); State v. Lundy, 334 So.2d 671 (Fla. 4th DCA 1976). Such a showing is made, however, where the basis for the prior valid temporary detention is articulable or founded suspicion of criminal activity involving an actual or potential threat of violence. Terry v. Ohio, 392 U.S. 1, 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); State v. Brooks, 281 So.2d 55 (Fla.2d DCA 1973); State v. Woodard, 280 So.2d 700 (Fla.2d DCA 1973). This limited basis for, and scope of search is tailored specifically for the police to accomplish the temporary detention, freeze the criminal situation and investigate further without unnecessarily endangering the police officer involved.

III
In the instant case, we deal with a temporary detention of a defendant on the street followed by a carefully limited, self-protective search of the outer clothing of his person for the purpose of discovering the presence of weapons. Subsequent to this stop and frisk, a concealed firearm was seized from the defendant which, in turn, formed the basis for an arrest of the defendant for the felony of carrying a concealed firearm and a subsequent full-blown search incident thereto. This full-blown search revealed the presence of cocaine, a firearm clip, and ammunition. The trial court suppressed the firearm seized in the limited search and the cocaine, firearm clip, and ammunition seized in the full-blown search apparently on the theory, urged by the defendant, that the initial temporary stop of the defendant was not based on articulable or founded suspicion of criminal activity, and that the invalid stop, in turn, tainted the subsequent frisk, arrest and full-blown search. We cannot agree.
It is well-settled in this state that the presence of a bulge under a person's clothing which is consistent with, but does not reveal the actual outline of a firearm or other weapon constitutes, when coupled with other incriminating circumstances, articulable or founded suspicion of criminal activity for the police to temporarily detain the person involved and thereafter conduct a carefully limited, self-protective search of the outer clothing of the person involved for concealed weapons. McNamara v. State, 357 So.2d 410 (Fla. 1978); State v. Francois, 355 So.2d 127 (Fla.3d DCA 1978); Williams v. State, 294 So.2d 37 (Fla.3d DCA 1974); State v. Woodard, 280 So.2d 700 (Fla.2d DCA 1973); Thomas v. State, 250 So.2d 15 (Fla.1st DCA 1971). These decisions rest on sound ground as the police must be able, based on limited evidentiary showings, to act swiftly to disarm people carrying concealed weapons on the street; the possession of these firearms all too often leads to crimes of violence including murder. The governmental interest in suppressing the illegal possession of firearms is too great in this area to impose artificial restrictions on police conduct; yet, at the same time, a blanket authority to stop and frisk cannot be countenanced herein as important privacy interests are involved. A delicate balance must be struck.
In the instant case, the police observed the defendant with a bulge under his clothing which was suspiciously consistent with the presence of a firearm. This suspicion was further supported by the fact that (a) the defendant was wearing unseasonably long and heavy clothing which tended to indicate that this clothing was being used to hide something on his person from public view, and (b) the defendant had a prior criminal arrest record for illegally possessing firearms. Under these limited circumstances, we believe the police had an articulable or founded suspicion to believe that the defendant was carrying a concealed firearm. Although insufficient to constitute probable cause for arrest, it was certainly no inchoate or inarticulated hunch *1299 that caused the police to act as swiftly as they did in this case. As such, the stop and frisk of the defendant in the instant case was reasonable.
After the firearm was obtained from the defendant pursuant to a reasonable stop and frisk, it is clear that the police had probable cause to arrest the defendant for a felony, to wit: carrying a concealed firearm, and to thereafter conduct a full-blown search of the person of the defendant wherein they discovered cocaine, a firearm clip, and ammunition. The seizure of this additional evidence was reasonable as it was made incident to a valid arrest of the defendant. Moreover, no search or arrest warrant was obtained for the defendant and none was required.
The trial court committed reversible error in granting the defendant's motion to suppress the evidence seized by the police from his person. All of this evidence was reasonably seized from the defendant consistent with his right to be free from unreasonable searches and seizures under the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 12 of the Florida Constitution. The order under review must, accordingly, be reversed and the cause remanded for further proceedings.
Reversed and remanded.