PER CURIAM.
We have for review State v. J.L., 689 So.2d 1116 (Fla. 3d DCA 1997), which expressly and directly conflicts with Butts v. State, 644 So.2d 605 (Fla. 1st DCA 1994). We have jurisdiction pursuant to article V, section 3(b)(3) of the Florida Constitution. For the reasons expressed below, we decline the State’s invitation to create a firearm or weapons exception[1] to the limitations on searches and seizures set out in the Fourth Amendment to the United States Constitution and the parallel provisions of the Florida Constitution.
The facts and issues in this case and Butts are similar in nature. Both cases involve an anonymous telephone tip and the issue of whether the police possessed the necessary reasonable grounds to stop and frisk a citizen based solely upon the anonymous tip.
In this case, the police received an anonymous tip stating that several young black males were standing at a specified bus stop during the daylight hours. The anonymous informant stated only that one of the individuals, the one wearing the “plaid-looking” shirt, was carrying a gun. Two police officers arrived at the specified bus stop approximately six minutes after receiving the anonymous tip and observed three black males, one of whom was wearing a plaid shirt. The three males were engaged in no suspicious or illegal conduct and no additional suspicious circumstances were observed by the officers. One of the officers immediately accosted J.L., who was wearing a plaid, shirt, and ordered him to put his hands above his head. Then, without questioning or other introduction, the officer proceeded to frisk J.L. and seized a gun from J.L.’s left pocket. At the same time, the second officer, again without discussion, frisked the other two individuals. At trial, J.L.’s motion to suppress the gun was granted. On appeal, the Third District Court of Appeal reversed and held that the police had a reasonable suspicion that J.L. was carrying a concealed weapon. See J.L., 689- So.2d at 1117. The district court reasoned that the investigatory stop and frisk was justified because the surrounding circumstances indicated to the officers that the anonymous tip was reliable. See id.
In Butts, the police received an anonymous tip describing the appearance and location of a man on a bicycle who was said to be carrying a concealed gun and possibly selling drugs. The officers responded to the tip and observed Butts, who matched the description provided by the informant, riding a bicycle in the location described by the informant. The officers stopped Butts after a brief chase and detained him. The officers observed a gun in Butts’ pocket and seized it. The officers frisked Butts and seized packets of cocaine and heroin. At trial, Butts’ motion to suppress the gun and drugs was denied. On *206 appeal, the First District Court of Appeal held that the anonymous tip was not sufficiently reliable because it lacked specificity and the officers failed to independently corroborate significant aspects of the tip. See Butts v. State, 644 So.2d at 606. Specifically, the district court found that the tip failed to provide predictions regarding Butts’ future movements or activities and that the police officers only verified the innocent and nonin-criminating details of the tip. See id. In addition to the First District in Butts, the Fourth District has held that verification of an anonymous tip, by itself, is insufficient to justify a stop and frisk. See Pinkney v. State, 666 So.2d 590 (Fla. 4th DCA 1996).
In this case, J.L. asserts that the police officers did not have the requisite reasonable suspicion to justify a stop and frisk and that consequently the seizure of the firearm was unconstitutional. J.L. notes that the anonymous tip included no predictive qualities and that the officers only verified the innocent details of the tip.
We begin our analysis by noting that one of the cornerstones of this nation’s foundation is the constitutional protection that individuals have a right to be free from unreasonable searches and seizures. See U.S. Const, amend. IV. The decision of the district court in J.L. seriously infringes upon this defining right.
The law is well established that a police officer may, in appropriate circumstances, stop a person for the purpose of investigating possible criminal behavior, even though there is no probable cause for an arrest, as long as the officer has reasonable suspicion that the person is engaged in criminal activity. See Terry v. Ohio, 392 U.S. 1, 19-23, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The circumstances may even require a frisk of the person to determine whether the person is carrying a weapon, if the police officer has a reasonable suspicion that the person is armed and poses a threat to the officer or others. See id. at 27, 88 S.Ct. 1868. However, when the police act on the information of an informant, the reliability of that information must be established before a citizen can be stopped and frisked.
Anonymous tips are generally less reliable than tips provided by known informants who have previously provided information to the police in the past, see Adams v. Williams, 407 U.S. 143, 146-47, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), or face-to-face informants, see United States v. Salazar, 945 F.2d 47, 50-51 (2d Cir.1991). Tips from known reliable informants, such as an identifiable citizen who observes criminal conduct and reports it, along with his own identity to the police, will almost invariably be found sufficient to justify police action. In contrast, anonymous tips must be closely scrutinized. “[A]n anonymous tip alone seldom demonstrates the informant’s basis of knowledge or veracity inasmuch as ordinary citizens generally do not provide extensive recitations of the basis of their everyday observations and given that the veracity of persons supplying anonymous tips is ‘by hypothesis largely unknown, and unknowable.’” Alabama v. White, 496 U.S. 325, 329, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990) (quoting Illinois v. Gates, 462 U.S. 213, 237, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).
However, an anonymous tip can provide the basis for reasonable suspicion, provided that it can be established that the tip is reliable. See White, 496 U.S. at 332, 110 S.Ct. 2412. A tip’s reliability can be established in a number of different ways. A tip may describe suspicious details concerning conduct that is presently occurring or is about to occur in the future (i.e., a call received after midnight, on a warm summer evening, stating, “A person is carrying a gun; that person is wearing a ski mask and a long trench coat and is approaching a convenience store.”). Verification by the police of the suspicious details clearly provides the police with the requisite reasonable suspicion to make a Terry stop.
The more difficult case involves those tips which allege criminal conduct, but only describe “innocent details of identification,” for which the details in and of themselves are in no way incriminating or indicative of criminal behavior. Butts, 644 So.2d at 606 (quoting Robinson v. State, 556 So.2d 450, 452 (Fla. 1st DCA 1990)). Innocent detail tips merely provide the police with verifiable details *207 which are completely innocent in nature (i.e., a tip similar to the one in this case, which only describes innocuous clothing, location, etc.). Nevertheless, innocent detail tips can still prove to be reliable and be the foundation for reasonable suspicion. See United States v. Walker, 7 F.3d 26, 31 (2d Cir.1993). For instance, a tip can predict particular actions which will occur in the future. Future predictions can establish that the tip is reliable if the tip “contain[s] a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted.” White, 496 U.S. at 332, 110 S.Ct. 2412 (quoting Gates 462 U.S. at 245, 103 S.Ct. 2317). “[Ijndependent corroboration by the police of significant aspects of the informer’s predictions [can] impart[] some degree of reliability to the other allegations made by the caller.” Id. If the actions do occur as the informant predicted, and the actions involve matters to which a normal person would not be privy, this demonstrates that the informant has a “special familiarity with the [suspect’s] affairs,” beyond the knowledge that a normal person would possess. Id.
Reasonable suspicion can be established by verification of a presently-occurring innoce'nt detail tip coupled with an independent police investigation. See generally United States v. Bold, 19 F.3d 99, 103 (2d Cir.1994). But for these types of tips (presently-occurring innocent detail tips), the independent police investigation would have to uncover something more than just a verification of the innocent details. The police must observe additional suspicious circumstances as a result of the independent investigation. See White, 496 U.S. at 329, 110 S.Ct. 2412 (“Some tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation before a forcible stop of the suspect would be authorized.”). Judge Allen’s opinion in Butts provides the correct framework for analysis:
An anonymous tip can provide the basis for an investigatory stop when the tip, as corroborated by independent police work, . exhibits sufficient indicia of reliability to furnish police with a reasonable suspicion that the defendant is engaged in criminal activity. Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). The “totality of the circumstances” test is used to determine the requisite level of suspicion. Id. The reliability of an anonymous tipster’s information is evaluated in part on its degree of specificity and in part on the independent corroboration of significant aspects of the informant’s predictions. Swanson v. State, 591 So.2d 1114, 1116 (Fla. 1st DCA 1992).
644 So.2d at 606.
The State argues that the tip in the present case is reliable. We disagree. Initially, we must observe that the essential issue presented here would be the same whether the anonymous tip involved three white males in business suits waiting for a taxi, or three white females waiting for a ride to a certain location. The officers received an anonymous tip that a young man was carrying a concealed weapon. The tip disclosed that the young man was standing by a bus stop at a specific location and that he was wearing a plaid-looking shirt. The reliability of this tip was not proven by any of the previously described ways recognized as sufficient in our ease law. The tip did not involve suspicious behavior which the police could have verified as suspicious upon arrival; rather the tip involved innocent details, none of which involved incriminating or criminal behavior.
Further, the innocent details provided in the tip did not involve future action for which the police could verify whether or not such future action would occur; rather the tip involved present action which could have been provided by “any pilgrim on the roadway.” Butts, 644 So.2d at 606 (quoting Robinson, 556 So.2d at 452). Finally, the presently-occurring innocent detail tip was not corroborated through an independent investigation on the part of the police which established that the suspect was engaging in suspicious behavior; rather, “the officers’ independent investigation added nothing to the reliability of the tip” — the officers merely verified that the defendant was in fact standing by the bus stop and wearing a plaid shirt, neither of which is suspicious. Butts, *208 644 So.2d at 606. Based on this record, we are unable to conclude that this tip exhibited “sufficient ‘indicia of reliability ” to furnish the police with the necessary reasonable suspicion to make a Terry stop and frisk. White, 496 U.S. at 328, 110 S.Ct. 2412 (quoting Adams v. Williams, 407 U.S. 143, 147, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972)).[2]
The officers in the present case merely arrived at the scene and confirmed that a male was wearing a plaid-looking shirt and standing by a bus stop. There is nothing suspicious about either of these details. Further, the officers did not observe anything suspicious about the suspect prior to performing the Terry stop. The officers’ actions are also called into serious question by the fact that the officers frisked all three individuals standing near the bus stop, not just the individual wearing the plaid shirt. Under the totality of the circumstances, we are unable to conclude that the officers had reasonable suspicion to stop and detain the three people at the bus stop and conduct a frisk in this case. Of course, there was nothing to prevent the police from engaging in a consensual encounter with the trio or from questioning them concerning their possession of a weapon as reported in the anonymous tip. However, the officers’ forcible actions in response to the anonymous tip were an active intervention into an otherwise peaceful situation and did not warrant a frisk until some observable suspicious conduct took place. Therefore, we agree with the trial court that the evidence recovered as a result of the impermissible stop and frisk should have been suppressed.
We are aware that other jurisdictions appear to recognize a “firearm exception”[3] to the reasonable suspicion test. See United States v. DeBerry, 76 F.3d 884 (7th Cir.1996) (holding that evidence is admissible based on mere verification of a presently-occurring innocent detail tip); United States v. Clipper, 973 F.2d 944 (D.C.Cir.1992) (same).[4] We *209 join the Supreme Court of Pennsylvania in rejecting this exception:
The Commonwealth takes the radical position that police have a duty to stop and frisk when they receive information from any source that a suspect has a gun. Since it is not illegal to carry a licensed gun in Pennsylvania, it is difficult to see where this shocking idea originates, notwithstanding the Commonwealth’s fanciful and histrionic references to maniacs who may spray schoolyards with gunfire and assassins of public figures who may otherwise go undetected. Even if the Constitution of Pennsylvania would permit such invasive police activity as the Commonwealth proposes — which it does not — such activity seems more likely to endanger than to protect the public. Unnecessary police intervention, by definition, produces the possibility of conflict where none need exist.
Commonwealth v. Hawkins, 547 Pa. 652, 692 A.2d 1068, 1071 (Pa.1997). In Florida, it is generally not illegal to possess a firearm. See generally ch. 790, Fla. Stat. (1997). Additionally, Florida provides that individuals are permitted to carry concealed weapons with a proper license. See § 790.06, Fla. Stat. (1997). There are even certain situations (not involved here) where juveniles are permitted to possess firearms. See § 790.22, Fla. Stat. (1997).
For the reasons stated herein, we determine that there is no firearm or weapons exception to the Fourth Amendment and the bare-boned anonymous tip involved herein, by itself, did not provide the police with sufficient cause to stop and frisk.
We recognize that in State v. Webb, 398 So.2d 820 (Fla.1981), this Court held that the anonymous information contained in a police BOLO (be on the lookout) bore sufficient indicia of reliability, therefore justifying a stop and frisk. We find that Webb is distinguished from the present ease. In Webb, the BOLO was pursuant to an investigation regarding alleged crimes that had already occurred on the previous two days. The suspect matching the BOLO was apprehended in the vicinity of the crime scene, providing further support that the person apprehended was in fact the perpetrator of the crimes. These two factors considered together provided the police with the necessary suspicion to make the stop. These circumstances are in contrast to the facts of the present case, where the police were not investigating a crime that had previously taken place.
In the present case, the Third District relied on this Court’s previous decision in Hetland v. State, 387 So.2d 963 (Fla.1980). In Hetland, this Court held that an anonymous tip can provide the basis for a valid stop if the tip carries sufficient indicia of reliability. We reaffirm this holding in today’s decision. However, we find that a mere detailed description of a person’s clothing and location, by itself, is not enough to sufficiently establish a tip’s indicia of reliability.
Accordingly, we quash the decision under review. We approve the opinion of the First District Court of Appeal in Butts.
It is so ordered.
SHAW, KOGAN and ANSTEAD, JJ., concur.
HARDING, C.J., concurs with an opinion, in which KOGAN and ANSTEAD, JJ., concur.
OVERTON, J., dissents with an opinion, in which WELLS, J., concurs.
WELLS, J., dissents with an opinion.

. The procedure employed by the police in this case is not permissible under the current law. It would only be permissible if this Court were to recognize an exception to the current law.

. The district court in J.L. cited to Bold to support its holding. However, Bold is distinguished from the present case. In Bold, the police received a tip that a twenty-one year old black male was carrying a gun. The informant alleged that the suspect was in a four-door gray Cadillac parked outside of a particular White Castle restaurant. The police verified the details of the tip and conducted an independent investigation, which revealed additional suspicious details that were separate and distinct from the details provided by the tip. When the police arrived, they noticed that the car was located in a remote part of the parking lot. One of the officers testified that the location of the car "raised [his] suspicion that [the people in the car] might be having something to hide.” Bold, 19 F.3d at 103. Further, the officers were unable to look into the car to further verify the tip because the windows of the car were darkly tinted. Another officer testified that the window tinting "aroused [his] caution level.” Id. at 100-01. The Second Circuit Court of Appeals concluded that "the anonymous tip in this case did not itself provide information from which to conclude that the caller was honest or his information reliable." Id. at 103. Thus, the police did not obtain the necessary reasonable suspicion to justify the Terry stop until the officers personally perceived the suspicious circumstances as a result of their own independent investigation. The actions of the police officers in the present case cannot be considered the equivalent of the independent investigation that took place in Bold.

. Often, carving out exceptions to constitutional principles can lead one to the top of a "slippery slope.” In Terry, the United States Supreme Court recognized a limited exception to the probable cause requirement. The Supreme Court reasoned:
[T]here must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has a reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime.
Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (emphasis added).
Those jurisdiction recognizing a "firearm exception" are in essence carving out an exception to an exception, by requiring less than reasonable suspicion for a Terry stop in response to an anonymous tip which alleges that an individual is carrying a firearm. We are unwilling to carve out this new exception from the original exception recognized in Terry.

. Allowing a "firearm exception” opens the door for potential abuse. For instance, what if a firearm tip proved to be unreliable, and instead of finding a weapon, the police officers discover illegal drugs? We have concerns that this scenario might subject a person to prosecution for possession of illegal drugs. See United States v. Clipper, 973 F.2d 944 (D.C.Cir.1992) (holding that drug evidence obtained as a result of the "firearm exception” stop and frisk was admissible, despite the fact that the tip was incorrect in the assertion that the suspect was carrying a ‘ gun). It will be difficult to determine where the line should be drawn if such an exception is permitted.