753 So.2d 640 (2000)
John FELTON, Appellant,
v.
STATE of Florida, Appellee.
No. 4D99-1589.
District Court of Appeal of Florida, Fourth District.
March 1, 2000.
*641 Richard L. Jorandby, Public Defender, and Kai Li Aloe Fouts, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Sarah B. Mayer, Assistant Attorney General, West Palm Beach, for appellee.
STEVENSON, Judge.
John Wesley Felton pled nolo contendere to possession of a firearm by a convicted felon and to carrying a concealed weapon, reserving the right to appeal the trial court's denial of his motion to suppress a.22-caliber rifle. We disagree with the trial court's determination that the facts were sufficient to give rise to a reasonable suspicion that Felton was engaged in criminal activity and, accordingly, reverse. See *642 Phuagnong v. State, 714 So.2d 527 (Fla. 1st DCA 1998)(holding that on review of a motion to suppress, the appellate court is to give deference to a trial court's factual findings, but legal conclusions are reviewed de novo).
In reviewing the trial court's assessment of the existence of reasonable suspicion, we begin with the evidence presented at the suppression hearing. Deputy Jobbitt of the Broward County Sheriff's Office testified that on September 24, 1998, Hurricane Georges was threatening the area and all of the department's officers had been called to work, including Detective Szish, a detective from the organized crime unit. Jobbitt testified that at around 9:47 p.m., he and Detective Szish were in a marked patrol car in the 5700 block of Pembroke Road. Jobbitt stated that, as they were driving down the road, he observed a group of men and women arguing. According to the deputy, there was a lot of yelling and hand motions, and he believed that a fight was about to start. As the officers pulled up in the patrol car, members of the group began to scatter and drift away, although some remained and were still yelling at one another.
At this point, Detective Szish went inside a nearby store to inquire while Jobbitt remained outside. Detective Szish came back outside and someone yelled, "the guy with the box has a gun." Jobbitt admitted that he did not know the identity of the person who made the statement and did not attempt to speak with the individual. Jobbitt stated that he then observed the defendant, who was on the other side of the six-lane highway, walking away from the group in a northeast direction across an open field. Jobbitt testified that he had previously observed the defendant in the group of people arguing, that the defendant was also screaming and yelling, and that the defendant had a long box.
After hearing this exclamation, Jobbitt and Szish got into the patrol car, drove around the block, and intercepted the defendant as he exited the far side of the field. According to Jobbitt, he stopped the defendant because "[h]e was involved in the disturbance up the street, and we had information that he was possibly armed." When the police reached the defendant, they ordered him to place the box on the ground and to put his hands on the patrol car. Jobbitt testified that they conducted a pat-down, but found no weapon. The box on the ground, however, was partially open, and Jobbitt observed a rifle through the opening. Jobbitt testified that he found a .22-caliber rifle and a couple of rounds inside the box.
As the Florida Supreme Court recently noted, "[t]he law is well established that a police officer may, in appropriate circumstances, stop a person for the purpose of investigating possible criminal behavior, even though there is no probable cause for an arrest, as long as the officer has reasonable suspicion that the person is engaged in criminal activity." J.L. v. State, 727 So.2d 204, 206 (Fla.1998)(citing Terry v. Ohio, 392 U.S. 1, 19-23, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)), cert. granted, ___ U.S. ___, 120 S.Ct. 395, 145 L.Ed.2d 308 (1999). A "`reasonable suspicion' is such suspicion as would `warrant a man of reasonable caution in the belief that [a stop] was appropriate.'" State v. Evans, 692 So.2d 216, 218 (Fla. 4th DCA 1997)(quoting Terry v. Ohio, 392 U.S. at 22, 88 S.Ct. 1868); see also Graham v. State, 714 So.2d 1142, 1143 (Fla. 1st DCA 1998)("To have a reasonable suspicion (also referred to as a `founded suspicion'), `the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity' based upon `the totality of the circumstances.'") (quoting United States v. Cortez, 449 U.S. 411, 417-18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)). Here, the only thing observed by the police was that Felton, who was carrying a long box, was a member of a group of men and women who had been yelling and arguing with one another. These observations alone are insufficient to give rise to a suspicion, reasonable or *643 otherwise, that Felton was engaged in criminal activity.
The justification for an investigatory stop need not come from an officer's own observationsthe officer may also rely upon information provided by others. See Pinkney v. State, 666 So.2d 590, 592 (Fla. 4th DCA 1996). "[W]hen the police act on the information of an informant, the reliability of that information must be established before a citizen can be stopped and frisked." J.L., 727 So.2d at 206 (emphasis added). "If the information is not personally observed, but received from an informant, the informant's `veracity,' `reliability,' and `basis of knowledge' are critical in establishing the reasonable suspicion required for a stop." Pinkney, 666 So.2d at 592 (quoting Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990)). With an anonymous tip, like the one involved in the instant case, however, since the tipster's veracity and the basis for his knowledge are unknown, "these tips justify a stop only once they are `sufficiently corroborated' by police." State v. Evans, 692 So.2d at 218 (quoting Alabama v. White, 496 U.S. at 330, 110 S.Ct. 2412).
In J.L. v. State, the supreme court described two circumstances under which an anonymous tip is sufficient to establish reasonable suspicion. "A tip may describe suspicious details concerning conduct that is presently occurring or is about to occur in the future.... Verification by the police of the suspicious details clearly provides the police with the requisite reasonable suspicion to make a Terry stop." 727 So.2d at 206 (emphasis added). Where a tip provides or describes only "`innocent details of identification,'" which in and of themselves are not incriminating or indicative of criminal behavior, however, police verification of these "innocent details" is insufficient to give rise to reasonable suspicion. Id. at 206-07 (quoting Butts v. State, 644 So.2d 605, 606 (Fla. 1st DCA 1994)). Under this second scenario, independent police investigation which not only verifies the innocent details but also reveals additional suspicious circumstances is required. See id. at 207.
In J.L., for example, police received an anonymous tip that several young, black males were at a particular bus stop during daylight hours and that the individual wearing a "plaid-looking" shirt was carrying a gun. 727 So.2d at 205. Approximately six minutes after receiving the tip, police arrived at the bus stop and observed three black men, one of whom was wearing a plaid shirt. Police immediately ordered the individual wearing the plaid shirt, J.L., to put his hands up and, without further questioning, frisked J.L., seizing a weapon from his pocket. The supreme court found that the anonymous tip was not sufficient to give rise to the reasonable suspicion necessary to support a stop. Specifically, the court noted that the tip did not involve suspicious behavior, but rather "innocent details, none of which involved incriminating or criminal behavior." Id. at 207. And,
the presently-occurring innocent detail tip was not corroborated through an independent investigation on the part of police which established that the suspect was engaging in suspicious behavior; rather, "the officers' independent investigation added nothing to the reliability of the tip"the officers merely verified that the defendant was in fact standing by the bus stop and wearing a plaid shirt, neither of which is suspicious.
Id. (quoting Butts, 644 So.2d at 606). See also R.A. v. State, 725 So.2d 1240 (Fla. 3d DCA), review denied, 741 So.2d 1137 (Fla. 1999).
We believe that the instant case is analogous to J.L. Here, an anonymous and unidentified voice from the crowd shouted "the guy with the box has a gun." This tip is the latter type described in J.L., where the tipster alleges criminal conduct but describes only innocent details. As such, in order for the tip to give rise to reasonable suspicion, police were required to conduct an independent investigation *644 that verified the innocent details and revealed additional suspicious circumstances. Deputy Jobbitt testified that he saw the man with the box and then effected a stop. Thus, while the police verified innocent details, they did not conduct an investigation that revealed additional suspicious circumstances. In the absence of an investigation revealing additional suspicious circumstances, we hold that the trial court erred in finding that the police had a reasonable suspicion sufficient to justify the stop of Felton.
REVERSED and REMANDED.
FARMER and HAZOURI, JJ., concur.