816 So.2d 789 (2002)
Nicolus D. HARFORD, Appellant,
v.
STATE of Florida, Appellee.
No. 1D01-1651.
District Court of Appeal of Florida, First District.
May 13, 2002.
*790 Stephen G. Cobb of The Cobb Law Firm, Shalimar, for Appellant.
Robert A. Butterworth, Attorney General, and Robert L. Martin, Assistant Attorney General, Tallahassee, for Appellee.
PER CURIAM.
Appellant, Nicolus D. Harford, pled nolo contendere to charges of possession of a controlled substance and possession of drug paraphernalia, reserving the right to appeal the trial court's denial of his motion to suppress evidence seized by the arresting officer during a frisk for weapons incident to a Terry stop. We reverse, based upon our determination that the search exceeded the scope of searches permissible under the Fourth Amendment, as delineated in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and later cases, and section 901.151, Florida Statutes.
The sole witness testifying at the suppression hearing was the arresting officer, a Walton County Deputy Sheriff, who stated that on the night of September 30, 2000, he responded to a dispatch report regarding a complaint of a disturbance in progress at 206 Frazier Road. The dispatcher informed the officer that the complaint indicated six to eight persons "fighting out in the middle of the road, with unknown weapons." Upon arrival at the scene, the officer encountered appellant. He described what then took place as follows:
I patted Mr. Harford down for my personal safety because there was more than one occupant [sic] and unknown weapons. Upon patting him down, I felt a box in his right front pocket. I opened the box to look for any weapon. There was a bag of marijuana and six pills in there.[1]
The box removed from appellant's pocket was a Newport brand cigarette box. The officer said he was not concerned that the box itself was a weapon. When questioned as to the type of weapons he was looking for, the officer said: "possibly a knife, a .22 caliber, anything that would fit inside the box." He further stated that he had seen knives that would fit inside such a box. He also stated that a .22 caliber derringer could fit in the box, although he admitted that he had never seen that, nor had he experienced problems in the field with knives in cigarette boxes.
The significant testimony of the officer, for purposes of our decision, came on cross-examination. He was asked: "What led you to believe there was a weapon in this cigarette box?" The officer's answer:
A. It's just for my safety. I popped the lid to look for my safety to make sure nothing was gonna happen, being there was more than one occupant. I was gonna have to talk to everybody there and I was just looking out for my best interest. If I made sure nobody *791 had nothing then I felt secure talking to everybody at once.
Q. Okay, So there was no specific reason why you were looking in that box? Well, let me rephrase that. You didn't suspect that there was a weapon in that box; is that correct?
A. (No response).
Q. If I'm wrong, tell me.
A. I didn't suspectI was doing it for the fact that I was making sure there was no weapon in that box.
Further testimony of the officer established that the dispatch to the scene did not disclose the nature of any weapons involved in the alleged disturbance. He noted that he had been to that location before and there had been fights with weapons, and: "[W]e have had numerous calls with .22's being fired and fights in progress out there." However, the officer candidly admitted that on this occasion there was no one at the scene threatening him in any manner; there were no suspicious movements; and there was no information he had received from any source indicating that there could be a weapon in the cigarette box, "other than being dispatched over the radio that there was weapons involved."
In the order denying the motion to suppress, the trial court made the following findings:
The officer was dispatched to a disturbance in progress involving weapons. Upon his arrival at the scene, there were six subjects in the street. All six subjects were patted down for weapons. The Defendant had a hard cigarette box in his left [sic] front pocket, which was removed by the officer and opened to see if a weapon (knife, etc.) might be in the box. The contraband (drugs) was found in the cigarette box and the Defendant was arrested for possession. Under these circumstances, it was not unreasonable for the officer to check the box for officer safety.
We note, initially, that a trial court's ruling on a motion to suppress "comes to the appellate court with a presumption of correctness, so that we must interpret the evidence and reasonable inferences and deductions in a manner most favorable to sustaining the trial court's ruling." State v. Shaw, 784 So.2d 529, 530 (Fla. 1st DCA 2001), and cases therein cited. "Deference is given to findings of fact unless they are clearly erroneous, whereas the application of the law to the facts is subject to de novo review ." Id.
It is fundamental that the burden is on the State to prove that officers have probable cause for a seizure without a warrant; and probable cause must be based on facts known to exist. State v. Doctor, 596 So.2d 442 (Fla.1992), and cases cited. Viewing the facts established by the State in the light most favorable to upholding the order of the trial court, we are nevertheless compelled to conclude that the seizure was invalid and the evidence should have been suppressed. In so ruling, we confine our decision to the issue of whether the officer was justified in opening the cigarette box once it was determined to be such, since that is the only issue argued here by the appellant. We therefore are not called upon to discuss the validity of the officer's temporary detention of appellant, under Terry stop authority; nor are we asked to rule on whether the pat-down and removal of the box from appellant's trousers was justified. We confine our decision to the issue argued, namely: whether the officer, once it was discovered by him that the object removed from appellant's front pocket was merely a cigarette box, was justified in opening the box for further examination of the contents.
*792 It is evident from the officer's testimony recited above, in part, that after removal of the box from appellant's pocket he knew the object was not a weapon; and most significantly, as he forthrightly admitted, he did not suspect that there was a weapon in the box. This testimony, coupled with the absence of "specific and articulable facts," as required by Terry v. Ohio, 392 U.S. at 21, 88 S.Ct. 1868, warranting the officer in a reasonable belief or suspicion that appellant was armed and dangerous, persuades us that opening the box exceeded the limits of a justifiable intrusion on the privacy protected by the Fourth Amendment.[2]
Our own statute makes it clear that, assuming the officer has probable cause to believe that the person detained is "armed with a dangerous weapon and therefore offers a threat to the safety of the officer or any other person," the officer may search the person "only to the extent necessary to disclose, and for the purpose of disclosing," the presence of a weapon. Section 901.151(5), Florida Statutes. Although, as this court has noted, a searching officer's "`[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis,'" State v. Shaw, 784 So.2d at 533 (quoting Whren v. United States, 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)), an officer's admission that he had no belief that the container contained a weapon is a factor weighing heavily against the validity of the search. See M.A.P. v. State, 403 So.2d 1384 (Fla. 2d DCA 1981) (officer did not believe paper bag contained a weapon); Piediscalzo v. State, 549 So.2d 255 (Fla. 2d DCA 1989) (officer did not think cigarette package contained a weapon); Lencsak v. State, 579 So.2d 882 (Fla. 2d DCA 1991) (no evidence that the officer had a reasonable suspicion that a paper bag contained a weapon); see also, In the Interest of J.B., 632 So.2d 708 (Fla. 4th DCA 1994) (trial court erred in failing to suppress marijuana found when officer opened and inspected a Marlboro cigarette box removed from person's pocket, citing C.H. v. State, 548 So.2d 895 (Fla. 3d DCA 1989)).
The state attempts to distinguish this case from others finding a search invalid by pointing to the dispatch report indicating the threat of the presence of weapons. The state notes that the officers in the cases of In the Interest of J.B. and C.H., supra, unlike this case, had received no report of weapons. We find this argument unpersuasive. The state offers no authority supporting its claim that the vague and general police dispatch report of "fighting with unknown weapons," without more, furnished the basis for a reasonable suspicion that the cigarette box contained a dangerous weapon.
We find the opinion of the third district in C.H. particularly relevant. In that case, an officer observed a large bulge in C.H.'s pants pocket, conducted a pat-down, and removed a metal cigarette case. In reversing the order denying suppression of a razor blade and rock cocaine found in the cigarette case, the court reasoned that the bulge in C.H.'s pocket may have given rise to a reasonable suspicion that he was armed, citing State v. Ramos, 378 So.2d 1294 (Fla. 3d DCA 1979)(presence of a bulge consistent with outline of weapon, when coupled with other incriminating circumstances, may give rise to a reasonable belief that a suspect is armed) (emphasis ours); however, the C.H. court concluded, "that reasonable suspicion disappeared once the officer determined that *793 the object in the pocket was a cigarette case and not a weapon." C.H., at 895. Further, the court concluded: "There was no evidence presented that the officer had a reasonable suspicion that the cigarette case contained any kind of weapon...." Id. The material facts in this case are indistinguishable from those in C.H.
Finally, we note that the Florida Supreme Court, in J.L. v. State, 727 So.2d 204 (Fla.1998), aff'd, Florida v. J.L., 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), has rejected the notion that there is a firearm or weapons exception to the Fourth Amendment.
For the reasons expressed above, the judgment of conviction is reversed, and the defendant is ordered to be discharged from his sentence.
WEBSTER, J. and SMITH, LARRY G., SENIOR JUDGE, concur; BOOTH, J. dissents without opinion.
NOTES
[1] In the absence of any explanation in the record we assume that the officer's use of the word "occupant" refers to occupants of the road.
[2] The officer's testimony is noticeably silent as to his observations of the Newport cigarette box, specifically with regard to anything about its weight, feel or appearance, such as might indicate the presence of a metal object, be it knife or gun.