SORONDO, J.
(dissenting).
The trial court determined the facts to be the following:
On February 15, 2001, Miami Dade Police Officer John Rojas received a dispatch that a black male wearing all orange clothes was waiving a gun in the air at the intersection of Northwest 62nd Street and 31st Avenue. Officer Rojas drove to the intersection, but did not see anyone at the intersection matching the description. Officer Rojas looked south on Northwest 31st Avenue, and saw respondent, who was wearing all orange clothing, walking down the street. Officer Rojas followed the respondent in his vehicle. When the respondent turned to walk east into an alley, Officer Rojas exited his vehicle and began to follow the respondent on foot. While following the Respondent, Officer Rojas did not observe any gun or bulge on the Respondent. The Respondent’s hands were empty.
While walking in the alley, the Respondent turned around, made eye contact with Officer Rojas, then began running down the alley. The Respondent then jumped a fence of a residence, ran into the front yard, and took his shorts off, discarding them in the front yard. At no point during this encounter did Officer Rojas order the Respondent to stop. At the front of the yard, which turned out to be the residence of the Respondent, another police officer arrived and detained the Respondent. Simultaneously, the Respondent’s mother picked up the Respondent’s shorts and put them inside a washing machine located on the side of the house. Officer Rojas retrieved the shorts from the washing machine, felt a bulge or hard object in the pocket, and pulled out a pill bottle. Officer Rojas stated that he did not think that the hard object he felt was a gun. The Respondent was arrested after the discovery of the drugs inside the pill bottle. No gun was found.
On these facts, the trial judge suppressed the narcotics confiscated from respondent’s shorts. In her analysis, the judge focused on the fact that “Officer Rojas relied upon an unsubstantiated anonymous tip to detain and search respondent,” and that the officer “did not independently observe the Respondent engage in any suspicious or illegal conduct.” Citing J.L. v. State, 727 So.2d 204 (Fla.1999). The court went on to conclude that “[mjerely walking down the street, and then running upon seeing a police officer, without any direction to stop, is not enough to justify a Terry stop.” Finding that there was no reasonable suspicion for the stop, the trial court suppressed the fruits of the defendant’s “seizure.”
I disagree with the lower court’s conclusion because I do not believe that this case is properly analyzed under the anonymous tipster line of cases. Instead, I believe this case involves an abandonment which is comparable to that in the case of California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). Like the respondent in the present case, Hodari fled at the approach of an unmarked police vehicle. As he ran, Hodari was looking behind himself and was unable to see that a police officer was approaching him from another direction. When he realized his predicament, he threw away a small rock of crack cocaine, moments before he was tackled and handcuffed by the officer. The United State Supreme Court framed the question before them as “whether, with respect to a show of authority as with respect to application of physical force, a seizure occurs even though the subject does not yield.” Id. at 626, 111 S.Ct. 1547. *805 The Court held that it did not. The Court went on to reason that because the contraband was abandoned during the chase, it was not a fruit of the seizure. Id. at 629, 111 S.Ct. 1547. Likewise, in the present case, before respondent was detained by police, he voluntarily removed and discarded his shorts.[1] Accordingly, the contraband discovered therein was not a fruit of the seizure of respondent, and the Fourth Amendment of the United States Constitution was not violated.
Because I believe the motion to suppress should have been denied, I respectfully dissent.

. Respondent argues that he was not abandoning his shorts because he was at the back yard of his own house. He further suggests that the fact that his mother immediately picked up the shorts and threw them in the washing machine speaks to his reason for removing his shorts. I am unpersuaded with this argument for two reasons. First, it is difficult to believe that respondent customarily disrobes in his back yard to make his clothing available for washing. Even if he did practice this unusual custom, it is still difficult to believe that he was thinking of his shorts' need for washing at the precise moment when he was being chased and apprehended by the police. Second, I am amazed that his mother, seeing that her son was being grabbed by a uniformed police officer, and seeing a second uniformed officer racing into her property, could think only of cleaning her son's discarded shorts. In my view, her act of picking up the shorts and throwing them in the washer was an act without meaning for purposes of this analysis and does not change the nature of respondent's abandonment of the shorts and its contents.