DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**PEDRO JOSE DOMINGUES,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D13-1096

[March 25, 2015]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Charles Burton, Judge; L.T. Case No. 2007CF010216AMB.

Carey Haughwout, Public Defender, and Alan T. Lipson, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Nancy Jack, Assistant Attorney General, West Palm Beach, for appellee.

WARNER, J.

Appellant challenges the revocation of his probation based upon a finding that he was arrested for DUI. He contends that the court erred in denying his motion to suppress, because no reasonable suspicion to stop appellant arose from a report of a domestic disturbance call. We agree that the call did not provide reasonable suspicion and reverse.

The state charged appellant with a violation of his probation based upon his arrest for DUI. He moved to suppress the evidence against him, claiming that an officer stopped him without reasonable suspicion that he had committed or was about to commit a crime. At the hearing, a Greenacres police officer testified that he responded to a "signal 38" call from a residence in the city. While the officer first stated that the call was a "domestic-violence-related call," he later admitted that a "signal 38" means a domestic disturbance. It does not necessarily include a domestic battery and could mean a verbal argument. The officer had no information that an act of domestic violence was occurring.

Upon his arrival, the officer saw appellant in a vehicle heading away from the residence. Dispatch advised the officer that appellant had left the residence in a vehicle of the same color. The officer stopped the vehicle, directing the appellant to return to the residence. When the officer arrived at the residence, he talked to appellant's girlfriend who had called in the report. He determined that no battery or other crime had occurred. However, he noticed that appellant had parked "a little crooked," that he could smell alcohol on appellant, and that appellant's speech was slurred. The officer therefore arrested appellant for DUI.

In denying the motion to suppress, the court concluded that the girlfriend was a "citizen informant" and that the officer had responded to a "signal 38" call, the code for a domestic dispute. However, the judge found that "although [the officer] could not recall any other specifics about the type of domestic dispute, that is the call frequently used for incidents of domestic violence." The judge found that the officer was responding "in good faith." After the denial of the motion, appellant reserved his right to appeal the dispositive motion and then admitted the probation violation. He was sentenced and this appeal follows.

In reviewing a ruling on a motion to suppress, the appellate court accords a presumption of correctness to the trial court's determination of historical facts but must independently review mixed questions of law and fact. *Connor v. State*, 803 So. 2d 598, 605 (Fla. 2001). The appellate court defers to the trial court's fact findings if they are supported by competent, substantial evidence, but reviews legal conclusions *de novo. Chaffin v. State*, 121 So. 3d 608, 613 (Fla. 4th DCA 2013).

"[A] police officer may reasonably detain a citizen temporarily if the officer has a reasonable suspicion that a person has committed, is committing, or is about to commit a crime." *Popple v. State*, 626 So. 2d 185, 186 (Fla. 1993) (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). The standard of reasonable suspicion to support a stop is also codified in section 901.151, Florida Statutes (2013), Florida's Stop and Frisk law. That statute provides:

> Whenever any law enforcement officer of this state encounters any person under circumstances which reasonably indicate that such person has committed, is committing, or is about to commit a violation of the criminal laws of this state or the criminal ordinances of any municipality or county, the officer may temporarily detain such person for the purpose of ascertaining the identity of the person temporarily detained and the circumstances surrounding the person's presence

2

abroad which led the officer to believe that the person had committed, was committing, or about to commit a criminal offense.

§ 901.151(2), Fla. Stat. (2013).

Appellant argues that the trial court should have granted his motion to suppress, because the officer did not have a founded suspicion that he had committed, was committing or about to commit a crime, as required by *Popple* and section 901.151, Florida Statutes (2013). Thus, there was no basis to justify his stop. The only information relayed to the officer, upon which the stop was made, was that he was responding to a "signal 38" at a residence and that the male involved had left in a particular vehicle. As this information did not provide reasonable suspicion that a crime had been, was being, or was about to be committed, no reasonable suspicion supported the stop.

We explained what constitutes reasonable suspicion in *Felton v. State*, 753 So. 2d 640 (Fla. 4th DCA 2000):

> A "reasonable suspicion" is such suspicion as would "warrant a [person] of reasonable caution in the belief that [a stop] was appropriate." *State v. Evans*, 692 So. 2d 216, 218 (Fla. 4th DCA 1997) (quoting *Terry v. Ohio*, 392 U.S. at 22, 88 S.Ct. 1868 (1968)); *see also Graham v. State*, 714 So. 2d 1142, 1143 (Fla. 1st DCA 1998) ("To have a reasonable suspicion (also referred to as a 'founded suspicion'), 'the detaining officers must have a *particularized and objective basis* for suspecting the particular person stopped of criminal activity' based upon 'the totality of the circumstances.'") (quoting *United States v. Cortez*, 449 U.S. 411, 417–18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)).

*Id.* at 642 (emphasis supplied). The justification for an investigatory stop need not come from an officer's own observations—the officer may also rely upon information provided by others. *Id.* at 643. Nevertheless, the totality of the circumstances must provide factual circumstances which, when interpreted in light of the officer's knowledge and training, point to the commission, or incipient commission, of a crime.

Since the officer testified only that he received a "signal 38" call, the report was one of a domestic disturbance. The officer even admitted that a "signal 38" does not necessarily include any crime, and nothing in the dispatch informed him that a crime had occurred at the residence.

3

Nothing on the officer's observation constituted evidence that a crime was being or going to be committed, as the only observation the officer made was of appellant driving away from the home. The girlfriend did not report any battery. Although the trial court found that the "signal 38" call was frequently made for domestic violence disputes, this was unsupported by any testimony at the hearing. Nor do we think it would justify a stop, as the signal could be for both non-criminal as well as criminal incidents. Without more, an officer could have only a hunch that a crime might have occurred.

The state cites *State v. Hunter*, 615 So. 2d 727 (Fla. 5th DCA 1993), in support, but we find that case distinguishable. There, the police were dispatched to a 911 "open line" call from a gas station, meaning someone at the station had called 911, hadn't spoken, but did not hang up. *Id.* at 728 n.1. The officers who responded treated it as an emergency, because it sounded like a robbery. *Id.* When they arrived, the store clerk was extremely distraught, crying and shaking. *Id.* When the officers asked if two men in a car at a pump were involved, even though the officers did not know what had gone on, the clerk pointed to one of the men. *Id.* at 728-29. At that point the officers stopped the men, and upon a patdown discovered drugs. *Id.* at 729.

The trial court granted a motion to suppress, finding that the officers lacked a reasonable suspicion to stop the men. *Id.* The Fifth District reversed, concluding that the officers had sufficient information to form a reasonable suspicion that a crime had occurred prior to the stop, given the type of establishment, late evening, open line call which suggested a crime was in progress, together with the distraught clerk who pointed out the men involved. *Id.* at 730. The court noted, as well, the popularity of gas stations with lone clerks as targets for late night robberies. *Id.*

*Hunter* is distinguishable, because the officers first had a suspicion, before arriving at the scene, that a robbery might have been occurring, and then, prior to the stop, obtained additional information from the nearly hysterical store clerk. Given the distress of the victim, the totality of the circumstances strongly suggested criminal activity had occurred. In contrast, in this case a domestic disturbance was reported. Even if we were to equate that with the open 911 call, in *Hunter* the officers made additional observations to provide reasonable suspicion of a crime having been committed. Here, the officer made no other observations which suggested that a crime had occurred before the officer stopped appellant.

The trial court also referred to the "good faith" of the officers in stopping appellant and directing him back to the residence. We have no doubt that

the officer was acting in good faith in an attempt to follow through on the domestic disturbance report. But that does not translate into a reasonable suspicion to stop the appellant under *Popple* or *Terry.*

We reverse the denial of the motion to suppress and subsequent revocation of probation. On remand, we direct that appellant be reinstated to his probation.

*Reversed and remanded.*

CIKLIN and GERBER, JJ., concur.

*     *     *

**Not final until disposition of timely filed motion for rehearing.**