FIRST DISTRICT COURT OF APPEAL
STATE OF FLORIDA

_____

No. 1D2024-2856

_____

STATE OF FLORIDA,

    Appellant,

    v.

JAKOBIE MILTON,

    Appellee.

_____

On appeal from the Circuit Court for Bay County.
Timothy Register, Judge.

December 3, 2025

PER CURIAM.

Jakobie Milton was arrested for, among other things, trafficking in amphetamines and fentanyl. After Milton successfully moved to suppress dispositive evidence, the State filed this appeal. We reverse.

I

On or about April 18, 2023, the Bay County Sheriff's Office received information from a confidential informant (CI) that a man named "RuRu" was traveling to the county to sell methamphetamines and fentanyl. The CI was known to Deputy Adams as a reliable informant who worked with the office to

establish several drug-related cases. When the CI contacted Adams and her office, he provided information that RuRu would travel to Bay County to sell drugs and a phone number he knew was associated with RuRu. Police determined that Milton was associated with the phone number provided by the CI. A photograph of Milton was also obtained, and the CI confirmed that Milton was the man he knew as RuRu.

When Adams confirmed Milton as the suspect of the investigation, the CI provided predictive details about when and where Milton would conduct his sale. At first, the CI informed Adams that the sale would occur at a given location, but a subsequent phone call led to a real-time change of the location to a Waffle House in Panama City Beach. Once there, Adams and other officers confirmed that Milton was present at the Waffle House and witnessed Milton entering a vehicle with a female passenger.

The officers conducted a "vehicle pin," which boxed Milton's vehicle in, not allowing him to leave. Milton began ramming two of the officers' vehicles, and after the female passenger exited the vehicle, Milton tried to flee on foot. After a quick encounter with Panama City Beach police, Milton was arrested, drugs were recovered from his vehicle, and Milton was charged with, among other things, trafficking in amphetamines and fentanyl.

Milton moved to suppress the seized drugs, arguing that the CI's information was unreliable, and so the officers lacked the requisite reasonable suspicion to conduct a *Terry*[*] stop. The trial court agreed and granted Milton's motion. The State now appeals.

II

We review a trial court's ruling on a motion to suppress under a "mixed standard." *State v. Dennard*, 385 So. 3d 1123, 1124 (Fla. 1st DCA 2024). The trial court's findings of fact are reviewed for competent, substantial evidence, and legal conclusions de novo. *Id.*

---

[*] Terry v. Ohio, 392 U.S. 1 (1968).

Given the facts are undisputed, the only question we must answer today is whether law enforcement had reasonable suspicion to justify a *Terry* stop and the subsequent search of Milton's vehicle. We answer that question in the affirmative.

"To justify a *Terry* stop, a law enforcement officer must have a well-founded, articulable suspicion that the person detained has committed, is committing, or is about to commit a crime." *Berry v. State*, 86 So. 3d 595, 598 (Fla. 1st DCA 2012) (citations omitted). "Reasonable suspicion need not involve observation of illegal conduct," it "depends on probabilities, not hard certainties[,]" and is based on "[a]n assessment of the whole picture[.]" *United States v. De La Rosa*, No. 21-11923, 2022 WL 1559159, *1 (11th Cir. May 16, 2022) (citations omitted).

Analyzing a *Terry* stop that was conducted due to information provided by an informant requires us to determine whether the information provided was reliable enough to create reasonable suspicion. *See Berry*, 86 So. 3d at 598 ("'In analyzing whether third-party information can provide the requisite reasonable suspicion, courts have looked to the reliability of the informant as well as the reliability of the information provided.'" (citation omitted)). Even "an anonymous tip can provide the basis for reasonable suspicion, provided that it can be established that the tip is reliable." *J.L. v. State*, 727 So. 2d 204, 206 (Fla. 1998). And we measure "the reasonableness of the officers' suspicion . . . by the information that the officers knew *before* conducting the stop-and-frisk." *Baptiste v. State*, 995 So. 2d 285, 294 (Fla. 2008).

We note, however, that it is unclear from the order granting suppression whether the trial court considered the nature of the type of information the CI provided. The type of information provided matters because the task of determining whether reasonable suspicion was present becomes harder when the information provided is innocent in nature. *See J.L.*, 727 So. 2d at 206 ("The more difficult case involves those tips which allege criminal conduct, but only describe 'innocent details of identification,' for which the details in and of themselves are in no way incriminating or indicative of criminal behavior." (citation omitted)).

3

We hold that the CI's information did not describe "innocent details of identification." Rather, the information provided was specific enough for law enforcement to develop reasonable suspicion that a crime would be conducted by a certain individual, at a given location, and at a specific time. That information is not what courts have deemed "innocent details of identification," rather, they are specific enough for law enforcement to act on— especially when that information comes from a CI who provided reliable information in the past. Still, even "innocent detail tips can [ ] prove to be reliable and be the foundation for reasonable suspicion." *J.L.*, 727 So. 2d at 207.

For instance, a tip can predict actions that will occur in the future. Future predictions can establish that the tip is reliable if the tip "contain[s] a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted." *Id.* (citing *Alabama v. White*, 496 U.S. 325, 332 (1990)).

Here, the information Adams received was exactly that. The CI provided Adams with Milton's phone number, identified him, and provided the exact location where the drug sale would occur. The fact that the CI was able to inform Adams that Milton's location changed, in real time, and that Adams identified Milton at the updated location is evidence that the CI had reliable information that could not be easily predicted.

Thus, given that the CI (1) worked up numerous drug cases for the department in the past, (2) provided identification of the suspect, and (3) provided real-time updates about when the drug sale was to occur, it cannot be said that the CI was in the same category as the anonymous tipster. *See cf. State v. DeLuca*, 40 So. 3d 120, 124 (Fla. 1st DCA 2010) ("The spectrum of reliability ranges from the relatively unknown veracity and reliability of an anonymous, unknown tipster whose assertions of criminal activity typically cannot be verified and thus require independent corroboration, to the presumed high reliability of a citizen-informer crime victim whose motivation in reporting illegality is the promotion of justice and public safety rather than financial gain, and who can be held accountable for the accuracy of the information given." (citations omitted)).

4

## III

Accordingly, because the CI here was far more reliable than an anonymous tipster, and the information he provided predicted future behavior, reasonable suspicion supporting the stop existed. Thus, the trial court erred in granting Milton's suppression motion.

REVERSED.

OSTERHAUS, C.J., and ROBERTS and WINOKUR, JJ., concur.

———————————————

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

———————————————

James Uthmeier, Attorney General, and Benjamin L. Hoffman, Assistant Attorney General, Tallahassee, for Appellant.

Jessica J. Yeary, Public Defender, and Justin F. Karpf, Assistant Public Defender, Tallahassee, for Appellee.