742 So.2d 315 (1999)
Gregory MAYNARD, Appellant,
v.
STATE of Florida, Appellee.
No. 98-02708.
District Court of Appeal of Florida, Second District.
June 4, 1999.
*316 Charles Holloway, Clearwater, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Diana K. Bock, Assistant Attorney General, Tampa, for Appellee.
PARKER, Chief Judge.
Gregory Maynard was charged with carrying a concealed firearm. He pleaded no contest to the charge, reserving his right to appeal the trial court's dispositive order denying his motion to suppress the firearm. Because we find that the police did not have reasonable suspicion to conduct a Terry[1] stop, we reverse.
The sole issue in this case is whether a telephone call which alerts the police of a crime qualifies as a disclosure from a citizen-informant when the informant claims to be the suspect's mother. The following facts were established at the hearing on the motion to suppress. In the morning hours of January 13, 1998, a woman claiming to be Maynard's mother telephoned a police dispatch center to inform them that Maynard was carrying a firearm in his backpack. The informant stated that Maynard had just left an address, which the informant provided, and was walking toward a nearby street, which the informant disclosed. The informant described Maynard as a white male, nineteen years of age, wearing a black and white shirt and black pants, and carrying a green backpack. She further informed the police that the firearm was a "Mac-10 Uzi machine gun," located in Maynard's backpack.
Officer Weinberg, having received this information from a BOLO issued by the dispatcher, traveled to the general area indicated by the dispatcher and intercepted Maynard. Maynard fit the given description. The officer stopped Maynard and waited for another officer to arrive on the scene before performing a pat-down search.
Officer Weinberg testified that he patted down Maynard for purposes of officer safety and found a 9mm machine gun in his backpack. Officer Weinberg subsequently arrested Maynard. The officer testified that Maynard was not doing anything illegal or suspicious and was only stopped on the basis of the information given by the dispatcher. The officer did not have independent knowledge of the informant's identity, and no attempt had been made to confirm the informant's identity. After Maynard was in custody, the police confirmed that Maynard's mother was, in fact, the informant.
Whether the police have reasonable suspicion to stop a suspect based on information provided by an informant depends upon the credibility of the informant. It is well-established that a confirmed tip from an informant who has provided reliable information in the past provides reasonable suspicion to stop a *317 person suspected of criminal activity. See J.L. v. State, 727 So.2d 204, 206 (Fla. 1998); State v. Hadden, 629 So.2d 1043, 1043-44 (Fla. 2d DCA 1993). Reasonable suspicion also arises from confirmed information provided by a citizen-informant. See Grant v. State, 718 So.2d 238, 239-40 (Fla. 2d DCA 1998). However, tips from anonymous informants must be confirmed and substantiated in some additional manner. See J.L., 727 So.2d at 207.
In this case, it is clear that the informant was not a reliable informant, as she had never previously provided information. However, the question is whether the informant qualifies as a citizen-informant, or a specific confidential informant whose reliability has not been determined, but who is deemed more credible than an anonymous informant. The Fourth District has provided this explanation:
A "citizen-informant" is normally motivated by the desire to further justice, not by pecuniary gain. Such informants are usually [persons not involved in criminal activity] who happen to find themselves in a position of victim of or witness to criminal conduct. As such, a citizen-informer is more deserving of a presumption of reliability than the informant who may be partially involved with the criminals on which he or she informs.
Aguilar v. State, 700 So.2d 58, 59 (Fla. 4th DCA 1997) (citations omitted).
Courts look to the totality of the circumstances to determine whether a tipster qualifies as a citizen-informant. See State v. Evans, 692 So.2d 216, 219 (Fla. 4th DCA 1997) (citing Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). The key factors that the courts consider are the informant's veracity and reliability. See id. In determining an informant's veracity and reliability, courts look to the informant's prior contacts with the police, accessibility, and motive. See State v. Rewis, 722 So.2d 863, 864 (Fla. 5th DCA 1998). See also Grant v. State, 718 So.2d at 239-40 (neighbor who called 911 from a street where burglaries had recently been reported and relayed information concerning a suspicious vehicle was a citizen-informant); Aguilar v. State, 700 So.2d at 58-59 (boy who personally approached the police at the scene and who the police recognized as a resident of the area qualified as a citizen-informant); State v. Evans, 692 So.2d at 218-19 (restaurant manager who gave her name and address and who acknowledged the police when they arrived at the scene was a citizen-informant); Persaud v. State, 659 So.2d 1191, 1191 (Fla. 3d DCA 1995) (homeowner burglary victim who called police to report the crime was a citizen-informant).
In Miller v. State, 613 So.2d 1351, 1353 (Fla. 2d DCA 1993), this court treated a caller who claimed to be the suspect's wife as an anonymous informant. This court described the caller as "a totally unidentified informant" because the officer who took the call had never previously spoken with the wife. See id. at 1352. However, the Fifth District has expressly held that a female caller who identified herself as a suspect's mother qualified as a citizen-informant. See Foy v. State, 717 So.2d 184, 185 (Fla. 5th DCA 1998).
While it can be argued that a suspect's mother is more reliable than the average citizen because of the inherent difficulty in implicating a loved one, we shall continue to follow Miller and certify conflict with Foy. We do not find that an informant is any more credible because she identifies herself as the suspect's mother. The possibility remains that any person could call the police and claim to be related to the suspect. The informant's motive is unknown until the police verify the informant's identity.
Modern police communication centers immediately know the address of an incoming telephone call. It does not seem unreasonably time-consuming to establish a procedure to verify that the informant is indeed the suspect's mother before searching *318 the suspect. The communication center could dispatch an officer to the informant's address or call back the informant to gain the necessary additional information to qualify the informant as a citizeninformant. This activity would not hamper a second officer from locating the suspect, observing the suspect, or participating in a consensual encounter with the suspect for the brief time necessary for law enforcement to gain the additional information necessary to justify a search.
Because this court continues to follow Miller and in this case finds that the informant is anonymous, we reverse because the tip was not substantiated in any additional manner. See J.L., 727 So.2d at 207. In J.L., the police received an anonymous telephone call stating that several young black males were waiting at a specified bus stop. See id. at 205. The informant told the police that the male wearing the "plaid looking shirt" was carrying a gun. See id. The police officers arrived at the bus stop and observed three black males, one of whom was clad in a plaid shirt. See id. Although the males were not engaged in any suspicious activity, an officer told the man in the plaid shirt, J.L., to raise his hands over his head. See id. The officer frisked J.L. and found a gun in his left pocket. See id.
The trial court granted J.L.'s motion to suppress the gun, but the Third District reversed, finding that the surrounding circumstances sufficiently corroborated the anonymous tip. See id. The Florida Supreme Court reversed, holding that innocent detail tips, without more,[2] were not sufficient to establish reasonable suspicion to stop and frisk an individual under Terry. See id. at 207.
In this case, the informant provided the police with an innocent-detail tip similar to that provided in J.L. The informant gave the police a location where Maynard could be found, described his clothing and appearance, and stated that he was carrying a firearm. Like the informant in J.L., the informant's tip was limited to a description of the suspect and his location. Accordingly, the anonymous tip was not sufficient to establish reasonable suspicion to stop and frisk Maynard under Terry. We therefore reverse and remand with directions for the trial court to discharge Maynard.
Reversed and remanded.
GREEN, J., Concurs specially.
CASANUEVA, J., Concurs specially.
CASANUEVA, Judge, Concurring.
I concur with the court's opinion in all respects save one. I continue to adhere to my dissent in Grant v. State, 718 So.2d 238 (Fla. 2d DCA 1998).
GREEN, J., Concurs specially.
My concurrence is compelled by the recited decisions although I am not convinced that an informant who identifies himself or herself by readily traceable information does not thereby supply sufficient credibility. I agree with the dissents of Justice Ben F. Overton and Justice Charles T. Wells in the case of J.L. v. State, 727 So.2d 204 (Fla.1998), and the dissent of Chief Judge Alan R. Schwartz in the case of R.A. v. State, 725 So.2d 1240 (Fla. 3d DCA 1999).
NOTES
[1] See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
[2] The court recognized two specific instances where anonymous tips would be sufficient to establish reasonable suspicion: (1) confirmation of suspicious details concerning conduct of the accused; and (2) verification of an innocent-detail tip coupled with an independent police investigation. See J.L. v. State, 727 So.2d 204, 206-07 (Fla.1998).