783 So.2d 226 (2001)
STATE of Florida, Petitioner,
v.
Gregory MAYNARD, Respondent.
No. SC95782.
Supreme Court of Florida.
March 29, 2001.
*227 Robert A. Butterworth, Attorney General, Robert J. Krauss, Senior Assistant Attorney General, and Diana K. Bock, Assistant Attorney General, Tampa, FL, for Petitioner.
Charles H. Holloway, Clearwater, FL, for Respondent.
James T. Miller, Jacksonville, FL, for the Florida Association of Criminal Defense Lawyers (FACDL), Amicus Curiae.
HARDING, J.
We have for review the opinion in Maynard v. State, 742 So.2d 315 (Fla. 2d DCA 1999), which certified conflict with the opinion in Foy v. State, 717 So.2d 184 (Fla. 5th DCA 1998). We have jurisdiction pursuant to article V, section 3(b)(4) of the Florida Constitution. For the reasons expressed below, we quash the decision in Maynard.
Both of these cases involve the degree of reliability to be given to a police informant who alerts the police to an alleged crime and identifies herself as the suspect's mother. In the case below, the police received a call concerning an alleged firearm violation. The woman/caller described the suspect as a white male, nineteen years of age, wearing a black and white shirt and black pants, and carrying a green backpack. She further informed the police that the firearm was a "Mac-10 Uzi machine gun," located in the suspect's backpack. The woman stated that the suspect had just left an address, which she provided, and was walking toward a nearby street. An officer received this information from a BOLO issued by the dispatcher and traveled to the general area indicated by the dispatcher. The officer identified and detained an individual who matched the description given by the dispatcher. The officer proceeded to pat down the individual for purposes of officer safety and found a 9mm machine gun in the individual's backpack. The individual was subsequently arrested and charged with carrying a concealed firearm. At a motion to suppress hearing, the officer testified that the individual was not doing *228 anything illegal or suspicious and was only stopped on the basis of the information given by the dispatcher. The officer did not have independent knowledge of the caller's identity, and no attempt had been made to confirm the caller's identity. After the individual was in custody, the police confirmed that suspect's mother was, in fact, the caller.
The trial court denied the defendant's motion to suppress the firearm and the defendant pled no contest to the charge, reserving his right to appeal the trial court's order. On appeal, the Second District Court of Appeal reversed, holding that the police did not have reasonable suspicion to conduct a Terry stop. The district court reached this conclusion after determining that the caller did not qualify as a "citizen informant," but rather an "anonymous informant," and therefore the tip was not sufficient by itself to establish reasonable suspicion. In reaching this conclusion, the district court certified conflict with Foy.
The facts of Foy are very similar to Maynard. In Foy, the police received a call concerning an intoxicated driver from a woman claiming to be the suspect's mother. The woman telephoned a police dispatcher and gave specific descriptions of her son, the car, including the make, model and color of the car, and the direction in which she believed her son was driving. The woman indicated that the suspect had just left her location. Shortly after receiving this information, the officer saw a car matching the description given by the woman, being driven by a male matching the description given by the woman and in the location given by the woman. The officer conducted a traffic stop on the vehicle and a subsequent search of the vehicle revealed significant amounts of controlled substances and drug paraphernalia. The defendant was arrested and charged with various drug offenses. The trial court denied the defendant's motion to suppress the evidence found during the search of the car and the defendant pled no contest with a specific reservation of his right to appeal the denial of his motion. On appeal, the Fifth District Court of Appeal affirmed, finding that the woman "was not an `anonymous informant'... but rather a `citizen informant' whose information is at the high end of the tipreliability scale." 717 So.2d at 185.
The resolution of the conflict in these two cases turns on the classification to be given to the callers/informants. In the case below, if the caller is treated as an anonymous informant, then the case would be controlled by our recent decision in J.L. v. State, 727 So.2d 204 (Fla.1998), aff'd, 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), and the type of tip in this case, by itself, would be insufficient to justify a Terry[1] stop. On the other hand, if the caller qualifies as a citizen informant, then the information from the tip in this case would be considered at the high end of the reliability scale, sufficient by itself to justify a Terry stop.
In State v. Evans, 692 So.2d 216, 219 (Fla. 4th DCA 1997), the Fourth District Court of Appeal considered a similar case. In Evans, Drema Steele, a manager at a McDonald's, was working at the drive-through one evening when the defendant placed an order. Ms. Steele believed that the defendant was intoxicated and she called 911 to report the incident. She gave her name, her address, her location, and stated that she was the manager of the McDonald's. She also provided a description of the defendant's vehicle and its tag number. An officer arrived at the McDonald's after being advised of the incident. *229 The officer did not know the caller's name but he knew that the caller was "somebody from McDonald's." When the officer pulled into the parking lot, he and Ms. Steele looked at each other, and she pointed at the defendant's vehicle to let the officer know it belonged to the suspect. The vehicle's description and tag number matched those provided by Ms. Steele to the dispatcher and relayed to the officer. The officer proceeded to stop the vehicle and a subsequent test of the defendant revealed that he was intoxicated.
The defendant moved to suppress the evidence, claiming that the initial stop was without the requisite reasonable suspicion. The trial court granted the motion and the State appealed. The district court reversed, finding that the officer's reliance on Ms. Steele's tip, by itself, was a sufficient basis to establish reasonable suspicion. The district court provided the following analysis for distinguishing between an anonymous informant and a citizen informant:
Not all tips are of equal value in establishing reasonable suspicion; they "may vary greatly in their value and reliability." Adams v. Williams, 407 U.S. 143, 147, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972). For this reason, the classification of Ms. Steele's call as an anonymous tip is of critical importance. Anonymous tips are at the low-end of the reliability scale:
The opinion in [Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)] recognized that an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity inasmuch as ordinary citizens generally do not provide extensive recitations of the basis of their everyday observations and given that the veracity of persons supplying anonymous tips is "by hypothesis largely unknown, and unknowable." Id. at 237, 103 S.Ct. at 2332.

Alabama v. White, 496 U.S. [325] at 329, 110 S.Ct. [2412] at 2415 [1990].
Because an anonymous caller's basis of knowledge and veracity are typically unknown, these tips justify a stop only once they are "sufficiently corroborated" by police. Id. at 330, 110 S.Ct. at 2416. Accord Pinkney v. State, 666 So.2d 590 (Fla. 4th DCA 1996) (anonymous tip requires "detailed and specific information corroborated by police investigation" since the informant's veracity, reliability, and basis of knowledge are unknown).
In this case, it is difficult to see how Ms. Steele can be deemed an "anonymous" caller: she provided her name, location, and occupation to the police. The ample information in the hands of the dispatcher regarding Ms. Steele's identity is constructively imputed to Officer Hall because Florida courts apply the "fellow officer rule," which operates to impute the knowledge of one officer in the chain of investigation to another. See Berry v. State, 493 So.2d 1098 (Fla. 4th DCA 1986) (an officer receiving a radio transmission to detain a certain individual has authority to stop the person described; the legitimacy of the stop will depend on whether the reporting officer had sufficient grounds to order the person detained); see also United States v. Hensley, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985) (holding that when a police communique has been issued on the basis of articulable facts supporting a reasonable suspicion, any authorized officer may make an investigatory stop on the basis of that bulletin, even though the officer making the stop is not aware of the underlying facts).
The second reason why Ms. Steele was not "anonymous" was that, even considering only the facts known to Officer *230 Hall himself, her identity was readily ascertainable. Officer Hall knew that the informant was a McDonald's employee, and they acknowledged each other when he arrived at the scene, with Ms. Steele pointing to Defendant's vehicle. The cases support the proposition that an informant's actual name need not be known so long as her identity is readily discoverable. See Lachs v. State, 366 So.2d 1223 (Fla. 4th DCA 1979)(holding that a tipster, "fully identified by occupation and address," was "entitled to as much credibility as ... a paid informer or the victims themselves").
A "citizen-informant"
Not only was Ms. Steele an identified informant, rather than an anonymous one, but she qualifies as a "citizen-informant," whose information is at the high end of the tip-reliability scale. "A citizen-informant is one who is `motivated not by pecuniary gain, but by the desire to further justice.'" State v. Talbott, 425 So.2d 600, 602 n. 1 (Fla. 4th DCA 1982) (quoting Barfield v. State, 396 So.2d 793, 796 (Fla. 1st DCA 1981)). As one commentator has explained:
[T]he courts have quite properly drawn a distinction between [informers likely to have been involved in the criminal activity] and the average citizen who by happenstance finds himself in the position of a victim of or a witness to criminal conduct and thereafter relates to the police what he knows as a matter of civic duty. One who qualifies as the latter type of individual, sometimes referred to as a "citizen-informer," is more deserving of a presumption of reliability than the informant from the criminal milieu. As Justice Harlan pointed out in United States v. Harris, [403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971)], the ordinary citizen who has never before reported a crime to the police may, in fact, be more reliable than one who supplies information on a regular basis. "The latter is likely to be someone who is himself involved in criminal activity or is, at least, someone who enjoys the confidence of criminals."
Wayne R. LaFave, Search and Seizure § 3.3 (3d ed.1996).
Id. at 218-19 (footnotes omitted).
In order to classify the tip in the present case, we apply the analysis in Evans to the facts and circumstances of this case. Initially, we find that the caller was not anonymous, as she told the police that she was the mother of the suspect, thereby demonstrating the basis of her knowledge and veracity, a factor that is seldom established from a truly anonymous tip. Additionally, the district court below stated that the caller also told the police that the suspect had recently left an address, which the caller provided to the police. Even though it is not clear whether the caller gave the police her actual name, the fact that she disclosed her address made her identity easily ascertainable. See Evans, 692 So.2d at 219 ("[A]n informant's actual name need not be known so long as her identity is readily discoverable.").
In addition to being an identified informant, we find that the caller qualified as a citizen informant, as defined in Evans. There is no indication that the caller was motivated by any reason other than a concern for the safety of her son and others. Under these circumstances, the stop and frisk was permissible under the Fourth Amendment. The tip provided the officer with the necessary reasonable suspicion to justify the stop.
Accordingly, for the reasons stated in this opinion, we quash the decision below and approve the decision in Foy.
It is so ordered.
*231 SHAW, ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ., concur.
WELLS, C.J., concurs with an opinion.
WELLS, C.J., concurring.
I concur with the majority opinion. I write to add that, for me, a factor to be considered regarding the motion to suppress was that the caller who described the person also described the weapon the person possessed as a "Mac-10 Uzi machine gun." Certainly, I would expect reasonable law enforcement to react by a stop and search because of the threat to community safety current events have demonstrated such a weapon poses.
NOTES
[1] See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).