24 So.3d 731 (2009)
A.M., a juvenile, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D08-2926.
District Court of Appeal of Florida, Third District.
December 23, 2009.
Carlos J. Martinez, Public Defender, and Brian L. Ellison, Assistant Public Defender, for appellant.
Bill McCollum, Attorney General, and Timothy R.M. Thomas, Assistant Attorney General, for appellee.
Before COPE, GERSTEN and SHEPHERD, JJ.
*732 COPE, J.
This is an appeal of an adjudication of delinquency for giving a false name to a law enforcement officer. The question is whether the law enforcement officer had a reasonable suspicion for an investigatory stop. We conclude that the answer is yes.
The officer in this case received a dispatch regarding a burglary in progress in the Cutler Ridge area of Miami-Dade County. The officer said that this area had been identified by the police department as a "hot zone" because of an increase in burglaries. The caller gave the location of the alleged burglary and a physical and clothing description of the suspect.
According to the officer, the dispatcher also indicated that a witness had followed the suspect to an auto shop close to U.S. Highway 1 and Southwest 220 Street. The officer drove to the auto shop and was flagged down by the witness. The distance from the burglary location to the auto shop was between 1/8 and 1/4 of a mile.
The officer stopped and spoke to the individual for ten to twenty seconds, in order to ascertain that they were talking about the same person. The individual pointed out the direction taken by the suspect. Neither the officer nor the dispatcher obtained the name of this witness.
The officer proceeded a few blocks and saw A.M., who matched the description. The officer stopped his car and spoke to A.M.
The officer asked A.M. what he was doing in the area and why he was not in school. During the conversation, A.M. told the officer that he had a driver's license. The officer asked for a name and date of birth.
A.M. initially stated that his name was James Jackson. When the name and date of birth were checked through the police car's computer, no driver's license came up under that name and date of birth.
The officer told A.M. he was aware that sometimes people are afraid that they may have a warrant for their arrest but he was eventually going to find out his name anyway, even if the officer had to take him into custody and fingerprint him. The officer placed A.M. in handcuffs in the back seat of the police car. A.M. then gave the officer the name James Myles and a different date of birth which would have made him an adult. Once again, a computer inquiry revealed no driver's license with that name and date of birth.
The officer patted down A.M. and found an identification card with what turned out to be his correct name. A computer inquiry revealed that there was a pick-up order for A.M. At the station, A.M. was fingerprinted and ultimately admitted his actual name.
By statute, "It is unlawful for a person who has been arrested or lawfully detained by a law enforcement officer to give a false name, or otherwise falsely identify himself or herself in anyway, to the law enforcement officer or any county jail personnel." § 901.36(1), Fla. Stat. (2008) (emphasis added). A.M. contended at trial that he was not lawfully detained. The trial court rejected this argument and adjudicated A.M. delinquent. A.M. has appealed.
A.M. argues that there was no reasonable suspicion to support an investigatory stop. A.M. relies primarily on Baptiste v. State, 995 So.2d 285 (Fla.2008). The Baptiste decision does not support A.M.'s argument.
In Baptiste an anonymous caller told the police that a man had waived a firearm in front of a grocery store at a particular location. The caller gave a description of *733 the individual. Two officers arrived and located the individual who corresponded to the description. No firearm was visible, nor were there any bulges or other visible indications that Baptiste possessed a firearm. The officers apprehended Baptiste at gunpoint, frisked him, and found a weapon.
After Baptiste was apprehended, a man approached one of the officers and told the officer that he was the one who placed the telephone call. He stated that he intended to remain anonymous, disappeared, and has never been identified. Id. at 288. The Florida Supreme Court held that "when investigating an anonymous tip, officers who are unable to independently corroborate criminal activity may not initiate a gunpoint seizure based upon confirmation of only innocent details-such as a physical description-with absolutely no observation or development of any suspicious behavior." Id. at 301.
In the present case there was an anonymous telephone call to the police reporting a burglary in an area having a recent increase in burglaries. The officer went to the auto parts store, where a citizen flagged down the officer and they had a face-to-face discussion. The officer spoke briefly with the citizen, ascertained that they were talking about the same individual, and went in the direction indicated by the citizen, where the officer found A.M.
The Baptiste decision explains:
State and federal case law establishes that the reliability of a tip which alleges illegal activity varies based upon whether the tip is truly anonymous, such as an anonymous telephone call, or whether it is offered by a "citizen informant" who approaches the police in person to report criminal activity. A tip from a citizen informant falls at a higher end of the reliability scale.
Id. at 291 (citing State v. Maynard, 783 So.2d 226, 228 (Fla.2001)); see also Baptiste, 995 So.2d at 291, 295-96 (collecting cases); Phillip A. Hubbart, Making Sense of Search and Seizure Law 194-98 (2005). In this case the anonymous tip was followed by a face-to-face encounter between the officer and the citizen who had followed A.M.
A.M. argues that the encounter with the citizen must be ignored because the officer testified that he did not know whether the citizen was the one who had placed telephone call to the police. We reject that argument. The telephone call indicated that an individual had followed the subject to the auto shop, and a citizen flagged the officer down when he arrived at that location. The officer did not ask the individual specifically whether he or she had made the telephone call to the police. Logically, however, either the citizen was the one who placed the call, or the citizen had been present with the one who did make the telephone call. Under the circumstances of this case, the stop was good.
Affirmed.