ROTHENBERG, J.
The defendant, Shuler Rod Hadley, appeals the denial of his motion to suppress the firearm that police found on his person when he was stopped and frisked by law enforcement. The defendant alleges that the stop and subsequent search of his person violated the United States and Florida constitutional protections against unreasonable searches and seizures. The question presented in this appeal is whether a tip provided to the police by a witness to a crime, who gave her name and specific details about the suspect, coupled with the officer’s observations, provided the police officer with reasonable suspicion to stop the defendant and to subsequently search him. Because the information provided by this witness was highly reliable, we affirm.
Article I, Section 12 of the Florida Constitution guarantees the right to be free “against unreasonable searches and seizures” and is to “be construed in conformity” with the identical rights contained within the Fourth Amendment to the United States Constitution. Police officers may curtail this right by stopping and patting down an individual to investigate possible criminal behavior, and to protect themselves and others against potentially armed suspects, based on information provided to law enforcement by an informant; but officers are bound by well-established case law holding that the tip must be sufficient to establish reasonable suspicion for the stop. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); J.L. v. State, 727 So.2d 204 (Fla.1998), aff'd, 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000).
In State v. Maynard, 783 So.2d 226, 229 (Fla.2001), the Florida Supreme Court held that “[n]ot all tips are of equal value in establishing reasonable suspicion; they ‘may vary greatly in their value and reliability,’ ” and recognized that the classification of the call or report is of critical importance, (quoting Adams v. Williams, 407 U.S. 143, 147, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972)). Because “the veracity of persons supplying anonymous tips is ‘by hypothesis largely unknown, and unknowable,’ ” id. (quoting Illinois v. Gates, *115 462 U.S. 213, 237, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)), anonymous tips have a low degree of reliability. For this reason, anonymous tips justify a Terry stop only when they are “sufficiently corroborated” through independent police investigation that, for example, may confirm some details of the tip. Alabama v. White, 496 U.S. 325, 331-32, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990) (holding that a tip is sufficiently corroborated when it “con-taints] a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted” (quoting Gates, 462 U.S. at 245, 103 S.Ct. 2317)).
In Florida v. J.L., the United States Supreme Court found that an anonymous tip from a caller about whom “nothing is known” did not justify the stop and frisk of J.L. when, “[ajpart from the tip, the officers had no reason to suspect [him] of illegal conduct.” 529 U.S. at 268, 120 S.Ct. 1375. In that case, J.L. matched the description of a “young black male standing at a particular bus stop and wearing a plaid shirt” who was suspected of carrying a gun. Id. The United States Supreme Court concluded:
That the allegation about the gun turned out to be correct does not suggest that the officers, prior to the frisks, had a reasonable basis for suspecting J.L. of engaging in unlawful conduct: The reasonableness of official suspicion must be measured by what the officers knew before they conducted their search. All the police had to go on in this case was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J.L.
Id. at 271. The Court distinguished the case from White, 496 U.S. at 325, 110 S.Ct. 2412, in which the anonymous tipster told police that the suspect would be leaving a particular apartment at a particular time in a car with the right taillight lens broken and that she would be going to a specific motel with a brown attaché case containing drugs — details that were corroborated by independent police work and supplied to the police with the reasonable suspicion necessary for the stop. Florida v. J.L., 529 U.S. at 270-71, 120 S.Ct. 1375.
At the high end of the reliability spectrum are tips from “citizen informants,” which are sufficient — standing on their own — to justify a Terry stop. Maynard, 783 So.2d at 228. Citizen informants are average citizens who by happenstance find themselves in the position of a victim or a witness and subsequently relate to police what they know about an incident. 4 Wayne R. LaFave, Search and Seizure, § 3.3 (3d ed. 1996). Although citizen informants may, too, be anonymous, their identity is readily discoverable and their motivation is one of concern for the safety of their fellow citizens and not pecuniary gain. Maynard, 783 So.2d at 229-30.
In Maynard, the tipster identified herself as the suspect’s mother and described the suspect as “a white male, nineteen years of age, wearing a black and white shirt and black pants, and carrying a green backpack” containing a “Mac-10 Uzi machine gun.” Id. at 227. An officer in the general area indicated by the caller, identified the suspect and stopped him based on the tip alone, even though the suspect “was not doing anything illegal and suspicious.” Id. at 227-28. The Florida Supreme Court affirmed, finding that even though the tipster did not provide her name, by identifying herself as the suspect’s mother, she demonstrated “the basis of her knowledge and veracity, a factor that is seldom established from a truly anonymous tip”; and because she gave her *116 address, her identity was “easily ascertainable.” Id. at 230 (citing State v. Evans, 692 So.2d 216, 219 (Fla. 4th DCA 1997)). Somewhere in between citizen informants and anonymous tipsters on the reliability scale are police informants, who likely have been involved in criminal activity and may be participating in undercover operations. See Barfield v. State, 396 So.2d 793, 796 (Fla. 1st DCA 1981).
In the instant case, the defendant, in seeking reversal of the trial court’s order denying his motion to suppress, relies primarily on J.L., 529 U.S. at 266, 120 S.Ct. 1375, which held that an anonymous tip indicating that an individual is carrying a gun is, without more, insufficient to justify a police officer’s stop and frisk of the individual. The defendant’s reliance on J.L., however, is misplaced, as the circumstances in this case are not analogous to those in J.L., and the holding similarly does not apply. Most important among the distinctions are the following. In the instant case, the tip that led the police to stop and frisk the defendant was not anonymous. The tip came from a woman who identified herself as Lorene Adams and she provided a phone number. Ms. Adams was a victim and a witness to alleged crimes, reporting an aggravated battery committed against her and shots being fired in the vicinity of a gas station. Thus, she qualifies as a citizen-informant and her tip falls at the high end of the reliability scale because she was not anonymous, her identity was readily ascertainable, she became a victim and observed further criminal conduct by chance, and she appeared to be motivated out of a concern for her own safety and that of the public. See Maynard, 783 So.2d at 230; State v. DeLuca, 40 So.3d 120 (Fla. 1st DCA 2010) (finding that the caller, who identified himself as the victim of a crime and provided the dispatcher with his name, cell phone number, and his location, and a description and tag number of the gunmen’s vehicle was a reliable citizen informant, despite the fact that the caller could not be located after the defendant was stopped).
The tip from the citizen informant was sufficient by itself to establish the requisite reasonable suspicion to justify the stop of the defendant, but we find it noteworthy that the tip offered additional indicia of reliability. For instance, unlike the tip in J.L., the tip in the instant case was not a simple allegation that an individual was carrying a weapon. It was, instead, to report that a crime had been committed. Additionally, the caller provided the whereabouts of the alleged shooter and described him in detail as an armed black male, with a blue cap, wearing a white T-shirt and blue jeans. The information the caller provided was also corroborated by the officer before he approached the defendant.
Immediately after hearing the BOLO generated by the caller’s report, Officer Jordan Fried, who was parked in the area described by the caller, scanned the crowd at the nearby Bunche Park Pool with binoculars. Officer Fried spotted the defendant, who was dressed in a white and blue hat, white shirt, and blue jean shorts, and thus matched the description provided by the witness, but who also stood out for another reason — he was the only person not wearing a bathing suit at the community pool. Officer Fried also observed that the defendant’s ankle-length blue shorts were sagging more on the right side, indicating a heavy object in the pocket and further corroborating the caller’s report that the suspect was armed. When Officer Fried and another officer approached the defendant, Officer Fried testified that the defendant “looked alarmed” with an “[o]h, crap” expression and began walking quickly in the opposite direction. Conversely, *117 in Florida v. J.L., the suspect was “just hanging out” and officers “had no reason” to suspect him of illegal conduct. 529 U.S. at 268, 120 S.Ct. 1375. Through his observations, Officer Fried independently corroborated the details of the tip, and by doing so, established more than the requisite reasonable suspicion to justify the stop. After stopping the defendant, Officer Fried recovered a loaded .380 caliber firearm from his pocket.
Although we conclude that the information provided by Ms. Adams clearly falls at the high end of the reliability scale, and justified the officer’s investigatory stop of the defendant on reasonable suspicion, we find that the officer’s observations, which corroborated the information provided by the citizen informant, further enhanced the reliability of the information provided. Accordingly, based on the totality of the circumstances, we conclude that the officer had reasonable suspicion justifying his investigative stop and the pat down of the defendant, and the trial court did not err in denying the defendant’s motion to suppress the gun found on his person.
Affirmed.
CORTIÑAS, J., concurs.