DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**GEOFFREY CARLO,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D2022-2040

[January 3, 2024]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Elizabeth A. Scherer, Judge; L.T. Case No. 21-5447CF10A.

Michael D. Gelety of The Law Offices of Michael D. Gelety, Fort Lauderdale, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Richard Valuntas, Senior Assistant Attorney General, West Palm Beach, for appellee.

GERBER, J.

The defendant, after being convicted of cocaine possession, appeals from the circuit court's order denying his dispositive motion to suppress the cocaine which police officers discovered in his pants' pocket after the officers had effectuated a warrantless arrest of the defendant for the misdemeanor crime of disorderly conduct. The defendant primarily argues that, to effectuate the warrantless arrest for a misdemeanor crime such as disorderly conduct, the elements of that crime must have occurred in the officers' presence, which did not occur in this case. Therefore, the defendant argues, his arrest was illegal, and the officers' subsequent search of his pants' pocket incident to his arrest also was illegal.

We agree with the defendant's argument. Thus, we are compelled to vacate the defendant's conviction and sentence, reverse the circuit court's order denying the defendant's motion to suppress, and remand for the circuit court to enter an order granting the defendant's motion to suppress.

We present this opinion in four parts:
1) the motion to suppress hearing;
2) the circuit court's ruling and the defendant's plea agreement;
3) the parties' arguments on appeal; and
4) our review.

### 1. *<u>The Motion to Suppress Hearing</u>*

The circuit court's evidentiary hearing on the defendant's motion to suppress revealed the following undisputed facts.

A patrol officer working the midnight shift received a high-priority radio call, alerting him of multiple reports about a man who allegedly had a knife and was threatening people at a multi-story apartment building.

Within five minutes, the officer arrived at the apartment building. The officer saw what he described as "a small group of people … a handful of people" in the parking lot. The officer asked where the subject was. Someone pointed to the top of a set of stairs to the second floor, where the defendant was standing next to a woman. The defendant and the woman were by themselves. The officer did not see a weapon in the defendant's hands. However, based on the information which had been described in the radio call, the officer drew his firearm in the defendant's direction.

Because the officer was alone, he did not think it was safe for him to approach the defendant or have the defendant come down the stairs. So while waiting for backup officers to arrive, the officer told the defendant to show his hands. Although the defendant did not reach for anything, the defendant did not show his hands. The officer repeated the command numerous times, during which the defendant became agitated.

A few minutes later, backup officers arrived. One officer directed the woman to descend the stairs. She did so without incident. A senior officer then arrived. The senior officer had heard on a radio call that the defendant had both a gun and a knife. Thus, after arriving at the scene, the senior officer asked the defendant if he had a gun. The defendant responded that he had a gun in his waistband. The senior officer commanded the defendant to put his hands up and descend the stairs.

The defendant did so. When the defendant got to the bottom of the stairs, the senior officer removed the gun from the defendant's waistband. The senior officer did not observe the defendant possessing a knife. The senior officer handcuffed the defendant, took the defendant to a nearby courtyard away from the bystanders, and had the defendant sit in a chair.

According to the senior officer, he was only detaining the defendant at that point to get the defendant secured, make sure the defendant posed no other threat, and find out why the defendant was agitated.

The defendant told the senior officer that "somebody [had been] screwing with his sister, these people keep breaking into the house … and he [had come] over there to let them all know not to screw with his sister." During that conversation, the defendant also said he possessed a concealed carry permit which had allowed him to carry the gun found in his waistband. The senior officer had another officer check the permit's validity. The check confirmed the defendant's permit was valid.

Nevertheless, the senior officer arrested the defendant for disorderly conduct, based on witness statements about the defendant's conduct before officers arrived, and based on the defendant's statements after being detained. The senior officer then searched the defendant incident to the arrest, and discovered a bag of cocaine in the defendant's pants' pocket.

Upon the state's review of the case, the state did not charge the defendant with disorderly conduct. Instead, the state charged the defendant only with cocaine possession.

The defendant filed a motion to suppress the cocaine. The motion cited section 901.15(1), Florida Statutes (2021) ("A law enforcement officer may arrest a person without a warrant when … [t]he person has committed a felony *or misdemeanor … in the presence of the officer.*") (emphasis added). The motion argued that no element of disorderly conduct had occurred in an officer's presence. Thus, the motion argued, the police's warrantless arrest of the defendant for disorderly conduct was illegal, as was the resulting search of his pants' pocket incident to his arrest.

At the hearing on the motion to suppress, the state responded that when the officers had arrived at the scene, they had confirmed with the people who had called 911 that the defendant had been acting irate, brandishing a weapon, and behaving erratically. According to the state, "[t]ips from known reliable informants such as an identifiable citizen who observed criminal conduct and reports it, along with his own identity to police, will almost invariably be found sufficient to justify police action." Thus, the state requested the circuit court to deny the defendant's motion.

In rebuttal, the defendant argued that, regardless of what the witnesses may have reported to the police, section 901.15(1) permits a warrantless

arrest for a misdemeanor only when the person has committed the misdemeanor in an officer's presence, which had not occurred here.

## 2. *The Circuit Court's Ruling and the Defendant's Plea Agreement*

After the hearing, the circuit court entered a written order denying the defendant's motion to suppress. The circuit court's order reasoned:

> "Although an officer generally does not have the authority to arrest for a misdemeanor which occurs outside of his/her presence, they do have a broader authority to temporarily detain a person to investigate a reported misdemeanor and to determine whether a 'notice to appear' should be issued" when a citizen informant initiates a call. *State v. Hilmer*, 9 Fla. L. Weekly Supp. 34a (17th Jud. Cir. 2001). As noted in *State v. Maynard*, 783 So. 2d 226, 228 (Fla. 2001), "[I]f the caller qualifies as a citizen informant, then the information from the tip in this case would be considered at the high end of the reliability scale, sufficient by itself to justify a *Terry* stop." In a specially concurring opinion in *Maynard*, Justice Wells opined: "I write to add that, for me, a factor to be considered regarding the motion to suppress was that the caller who described the person also described the weapon the person possessed … a [deadly weapon]. Certainly, I would expect reasonable law enforcement to react by a stop and search because of the threat to community safety current events have demonstrated such a weapon poses."

> The Court finds that because the callers were citizen informants who indicated that the Defendant "had a gun or knife," the officers who responded were justified in conducting an investigatory stop. As a result, the warrantless arrest is admissible.

> The Court finds that as to the physical evidence, the cocaine was found on the Defendant's person incident to a *Terry* stop, and as such, is admissible.

The defendant later entered into an agreement with the state in which the defendant would enter a no contest plea to the cocaine possession charge, in exchange for which the state agreed the defendant's motion to suppress had been dispositive, and the defendant could preserve his right to appeal the circuit court's denial of that motion. The circuit court approved those terms. Upon the defendant's no contest plea, the circuit

court withheld adjudication of the defendant's guilt, and sentenced the defendant to two years of drug offender probation.

### 3. *The Parties' Arguments on Appeal*

This appeal followed. The defendant summarizes his argument as follows:

> The warrantless misdemeanor arrest of [the defendant] for [d]isorderly conduct, was illegal and [u]nconstitutional, done without justification, in violation of the requirements of [section] 901.15(1)[, Florida Statutes (2021)]. The officers involved did not witness all of the actions and elements constituting disorderly conduct, and made a post-detention decision to execute such arrest based solely upon "utterances" made while in custody – utterances which clearly did not qualify as "fighting words" or false alarms such as yelling 'fire' in a crowded theater.

> Additionally, the [circuit] [c]ourt's [o]rder of denial mistakenly attempted to justify the warrantless arrest and subsequent search as justified by or incident to an "investigative stop," a *Terry* [s]top.

> As this and other findings of fact are not supported in the record, they are not entitled to a presumption of correctness nor to any preferential consideration.

> The [o]rder denying [the defendant's] [m]otion to [s]uppress must be reversed and the matter remanded for the suppression of the cocaine ....

The state pertinently responds:

> [T]he police had probable cause to arrest [the defendant] for disorderly conduct in this case without a warrant. § 901.15(1), Fla. Stat. The police responded to a dangerous situation, i.e., calls about a man with a gun or knife threatening and disturbing people. [The first officer on scene] testified that [the defendant] was argumentative and agitated .... [That officer] observed a small group of people gathered when he arrived .... After [the senior officer] arrived, he attempted to figure out why [the defendant] was so agitated and upset. [The defendant] claimed that someone was

5

"screwing with his sister," "these people keep breaking into the house," and "he was coming over there to let them all know not to screw with his sister." ...

....

Although [the defendant] legally possessed a concealed firearm at the scene, he admitted that "he was coming over there to let them all know not to screw with his sister." ... The evidence presented below, weighed in a manner most favorable to sustaining the [circuit] court's ruling, showed that [the defendant] affected the peace and quiet of the neighbors who witnessed his acts (as well as the police) and that such conduct constituted a breach of the peace or disorderly conduct.

### 4. *Our Review*

Our review of an order on a motion to suppress is mixed, by "deferring to the trial court's factual determinations but reviewing de novo its application of the law to the facts of the case." *State v. T.M.*, 248 So. 3d 172, 173 (Fla. 4th DCA 2018). Here, the circuit court's factual determinations are undisputed. Thus, we consider only whether the circuit court properly applied the law to the facts of this case.

We conclude the circuit court did not properly apply the law to the facts of this case.

Section 901.15, Florida Statutes (2021), pertinently states: "A law enforcement officer may arrest a person without a warrant when ... [t]he person has committed a felony or *misdemeanor ... in the presence of the officer.*" § 901.15(1), Fla. Stat. (2021) (emphasis added). *But see* § 901.15(9)(a)-(b), Fla. Stat. (2021) (allowing a warrantless arrest where probable cause exists to believe that a person has committed "[a]ny battery upon another person, as defined in s. 784.03" [or] "[a]n act of criminal mischief or a graffiti-related offense as described in s. 806.13.").

We recently interpreted section 901.15(1) in *Jing v. State*, 316 So. 3d 724 (Fla. 4th DCA 2021), as follows:

> To comply with the statute, the "arresting officer must have a substantial reason at the time of [the] warrantless misdemeanor arrest to believe from [the officer's] observation and evidence at the point of arrest that the person **was then**

6

**and there** committing a misdemeanor in [the officer's] presence." *State v. McCormack*, 517 So. 2d 73, 74 (Fla. 3d DCA 1987) (quoting *State v. Yunker*, 402 So. 2d 591, 593 (Fla. 5th DCA 1981)) (emphasis added).

To make a warrantless arrest for a misdemeanor, all elements of the offense must occur in the police officer's presence or have been personally observed by a fellow law enforcement officer. *See Malone v. Howell*, 140 Fla. 693, 192 So. 224, 226 (1939) ("An arrest without a warrant for a misdemeanor, to be lawful, can only be made where the offense was committed in the presence of the officer -- that is it must have been within the presence or view of the officer in such a manner as to be actually detected by the officer by the use of one of [the officer's] senses."); *State v. Lord*, 150 So. 3d 260, 262 (Fla. 1st DCA 2014) (explaining the "fellow officer rule" that permits an officer to perform a warrantless arrest for a misdemeanor offense "when the arresting officer has been provided information from a fellow officer sufficient to satisfy" the requirements of section 901.15(1), Florida Statutes).

*Jing*, 316 So. 3d at 730.

Section 901.15(1)'s "misdemeanor presence" requirement applies to warrantless arrests for disorderly conduct, which was the initial charge in this case and led the senior officer to perform a search incident to arrest and thereby discover the defendant's possession of cocaine. *Baymon v. State*, 933 So. 2d 1269, 1270 (Fla. 2d DCA 2006).

*Baymon* is virtually on point and favors the defendant here. In *Baymon*, a deputy testified that he responded to a call about a neighborhood disturbance. *Id.* When the deputy arrived, the defendant walked toward the deputy "aggressively with [the defendant's] hands in the air." *Id.* The defendant then put his hands in his pockets and continued approaching. *Id.* The deputy threatened to use force if the defendant did not stop and show his hands. *Id.* The deputy then detained the defendant, who agreed to sit in the back of the patrol car. *Id.* After the deputy took a statement from the neighbor who had called the police about the defendant's prior irate and loud conduct, the deputy arrested the defendant for disorderly conduct. *Id.* Searches incident to the arrest revealed a baggie of cocaine and a baggie of marijuana. *Id.* The defendant was charged with possession of the drugs, as well as disorderly conduct. *Id.* The defendant filed a motion to suppress the drugs, which the circuit court denied. *Id.*

The defendant then pled to the charges, specifically reserving his right to appeal the denial of his motion to suppress. *Id.* The circuit court and the state both agreed that the motion was dispositive. *Id.*

On appeal, the Second District reversed. Our sister court reasoned:

> An officer is authorized to make a warrantless arrest for a misdemeanor only when it is committed in the officer's presence. § 901.15(1), Fla. Stat. (2004); *Nickell v. State*, 722 So. 2d 924 (Fla. 2d DCA 1998). In this case, [the deputy] did not observe conduct constituting the crime of disorderly conduct. Although the deputy observed [the defendant] yelling and screaming, there was nothing to suggest that [the defendant] was inciting an immediate breach of the peace or was yelling the equivalent of "fire" in a crowded movie theatre. *See State v. Saunders*, 339 So. 2d 641 (Fla. 1976) (limiting disorderly conduct statute, when applied purely to speech, to fighting words and false words that create a clear and present danger to others); *see also Miller v. State*, 780 So. 2d 197 (Fla. 2d DCA 2001); *C.P. v. State*, 644 So. 2d 600 (Fla. 2d DCA 1994). [The defendant's] arrest was unlawful. Therefore, the law mandated suppression of the evidence seized in any search performed incident to that arrest. *Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963).

*Baymon*, 933 So. 2d at 1270.

The instant case is virtually indistinguishable from *Baymon*. None of the officers who had arrived at the scene personally observed the defendant committing the crime of disorderly conduct as prohibited by section 877.03, Florida Statutes (2021):

> Whoever commits such acts as are of a nature to corrupt the public morals, or outrage the sense of public decency, or affect the peace and quiet of persons who may witness them, or engages in brawling or fighting, or engages in such conduct as to constitute a breach of the peace or disorderly conduct, shall be guilty of a misdemeanor of the second degree[.]

Although the officers had observed "a small group of people … a handful of people" in the apartment complex's parking lot, had observed the defendant acting "agitated," and had heard the defendant's "utterances" explaining why he had become agitated, the officers did not personally observe the defendant commit any of the foregoing elements constituting

8

the crime of disorderly conduct. While the defendant may have been acting in such a manner before the officers arrived at the scene, the defendant was no longer acting in such a manner after the police arrived, i.e., in their presence. Thus, none of the elements constituting the crime of disorderly conduct occurred "in the presence of the officer[s]" to have permitted the officers to have effectuated a warrantless arrest of the defendant for that crime. § 901.15(1), Fla. Stat. (2021). That illegal arrest, in turn, tainted the officers' search of the defendant's pants' pocket incident to his arrest. Thus, the circuit court should have granted the defendant's motion to suppress the cocaine which the officers found in his pants' pocket.

We also agree with the defendant's argument that the circuit court's denial order mistakenly attempted to justify the search under *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868 (1968). In *Terry*, the United States Supreme Court held:

> [W]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.

392 U.S. at 30, 88 S. Ct. at 1184-85.

Here, after the senior officer arrived, the senior officer asked the defendant if he had a gun. The defendant responded that he had a gun in his waistband. The senior officer commanded the defendant to put his hands up and descend the stairs. The defendant did so. When the defendant got to the bottom of the stairs, the senior officer removed the gun from the defendant's waistband. The senior officer then learned that the defendant had a valid permit to have carried the concealed firearm. The senior officer did not observe the defendant possessing a knife.

The senior officer did not testify that the subsequent search of the defendant's pants' pocket was to locate the alleged knife which had been the subject of the 911 calls, or because he reasonably believed the defendant remained armed or dangerous, or because he had a reasonable

fear for his or others' safety.  Rather, the senior officer testified that he searched the defendant's pants' pocket merely incident to his arrest of the defendant for disorderly conduct.  Thus, the circuit court's attempt to have justified the search as a *Terry* stop was not supported by competent, substantial evidence.

### *Conclusion*

Based on the foregoing, we vacate the defendant's conviction and sentence, reverse the circuit court's order denying the defendant's motion to suppress, and remand for the circuit court to enter an order granting the defendant's motion to suppress.  Although the defendant also has requested us to direct the circuit court to dismiss the cocaine possession charge, that request must be made to the circuit court in the first instance.

*Reversed and remanded with directions.*

GROSS and CONNER, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***